**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Lee HAGER, Defendant-
Appellant.**

**No. 71–1212.**

United States Court of Appeals,
Seventh Circuit.

May 23, 1972.

Edward G. Maag, Harry J. Sterling, Belleville, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., J. William Roberts, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before MAJOR, Senior Circuit Judge,* FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Defendant Hager was convicted of receipt and concealment of a stolen 1968 American Motors Javelin, November 13, 1968, moving as interstate commerce, knowing the same to have been stolen.[1] He has appealed.

There was ample proof that a 1968 Javelin automobile, sequential number M351262, was stolen from the street in St. Louis, Missouri November 1, 1968. On November 13, 1968, it was found in the possession of Hager at an automobile body shop leased to him at Wood River, Illinois some 25 miles from St. Louis. The proper public vehicle identification number (VIN) plates had been removed and others attached, bearing the sequential number M150899. There was circumstantial evidence from which it could readily, perhaps irresistibly, be inferred that the VIN plates had been changed by Hager or with his knowledge in order to conceal the identity of the automobile and that he must have known it had been stolen.

We need state the details only to the extent necessary to explain the claims of error.

1. *Police officer's testimony concerning Illinois law.*

Corporal Wheeler of the Illinois State Police, specially trained in vehicle identification, went to Hager's shop No-

---

* Senior Circuit Judge Major, whose death occurred on January 4, 1972, heard oral argument, but did not participate in the adoption of this opinion.

I. 18 U.S.C. § 2313.

vember 13. He described the practices of automobile manufacturers with reference to VINs, both in a confidential location, and public location, and the significance of the numbers. He testified that he looked through the windshield of the Javelin driven by Hager and saw a homemade VIN plate, very crudely attached.

He testified that this model had two public VIN plates. After advising Hager of his rights, and obtaining permission to look under the hood, he found a second plate in the ordinary place, bearing sequential number M150899, crudely attached. When asked what he did next, he answered, "We impounded the Javelin on the basis that . . . the plates had been tampered with. . . . Under Illinois law it . . . can be construed a felony to possess a car or any motor vehicle with any of the manufacturer's I.D. numbers that had been tampered with, altered, changed, mutilated, and on this basis we took the car." Objection was made and overruled. Wheeler later inspected the confidential VIN and found it was M351262 and through that number the car was traced to its owner.

It is argued that Wheeler's answer was improperly allowed to stand because it was an interpretation of law. For the purpose of the case it was necessary only to state the officers had seized the car, since no issue was raised as to their authority to do so. In any event, however, Wheeler had been shown to be specially trained in the particular field and it is not asserted that his conclusion was faulty.

Defendant relies on Huff v. United States,[2] where it was held to be error to permit a customs inspector to testify to his interpretation of the customs laws and give his opinion that jewelry in the possession of defendant was commercial rather than personal effects. In that case, unlike the present one, the conclusion went to the central issue for decision. A conclusion in that situation, even by an expert, is often rejected as a usurpation of the function of court and jury.

It is also argued that Wheeler's testimony was prejudicial because it stated that Hager was probably guilty of a crime under state law by reason of his possession of an automobile which had its identification plates changed. Wheeler's other testimony, however, had made very clear the significance of an alteration of a VIN. The jury could not have failed to realize the significance of the altered number adverse to Hager whether or not possession was an offense under Illinois law. The information that it was, or probably was, could not have produced substantial prejudice under these circumstances.

2. *Testimony tending to show other offenses.*

█ Corporal Wheeler testified that he observed an Oldsmobile and Dodge in Hager's shop with VIN plates missing. There was also testimony by a dealer named Langin that in July 1968, Hager had bought a wrecked Camaro from Langin, promising an exorbitant price, but taking with him only the title and VIN plate. This testimony tended to suggest that Hager was guilty of concealing the identity of other stolen automobiles, and it is argued that the testimony was improper for that reason. Such evidence of similar offenses, however, was highly relevant and properly admitted because it tended to show a particular pattern of transfer of VIN plates which was again followed in the offense charged and is therefore probative of intent and guilty knowledge.[3] It also tended to discredit Hager's testimony indicating he was unfamiliar with the significance of the VIN.

2. 273 F.2d 56 (5th Cir., 1960).

3. Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), United States v. Iacullo, 226 F.2d 788 (7th Cir., 1955), United States v. Marine, 413 F.2d 214 (7th Cir., 1969).

3. *Claim of improper questions and argument concerning Schuler and Burbank.*

Hager testified in his own defense. He claimed that in the summer of 1968 he had leased the body shop premises at the request of John Schuler, that Schuler and Bob Burbank carried on the business, and Hager was not active in it but visited only infrequently. He acknowledged that he had purchased the wrecked Javelin M150899 on October 3 in St. Louis. He claimed, however, that he turned it over to Burbank, who promised to rebuild it for Hager for $1,000. About November 7, Burbank let Hager know the car was nearly ready. Hager later paid him and obtained the car which he supposed was the rebuilt M150899. The gist of this improbable claim was that, without Hager's knowledge, Burbank elected to earn his money by obtaining the stolen Javelin, mounting on it the VIN plates belonging to the wrecked car he had promised to rebuild, and delivering the stolen car in its place.

Hager had disclosed in his testimony that he had met Schuler and Burbank when all three were serving terms in a Missouri penitentiary. He also disclosed that in mid-October Schuler had been arrested by federal authorities "for . . . illegal flight or something, but I don't know what."

■ Hager offers an argument, based on questions asked on cross-examination of him about Schuler. He responded in the negative to questions whether Schuler had stayed at Hager's home, whether he knew Schuler was a fugitive from the law, and whether Schuler told him he was wanted on an unlawful flight warrant. Under the circumstances and in the light of the propriety of testing the claim Hager made about the leasing of the body shop as a favor to Schuler, we think the questions were within reasonable bounds. They were not objected to.

■ The second point is more arguable. Hager's testimony, if taken at face value, suggested that Burbank must have been the one who knowingly received and concealed the stolen automobile, and defrauded Hager as well. Government counsel could legitimately ask whether Burbank was available, and might properly point out on argument to the jury that Burbank had not been called as a witness.

On cross-examination, government counsel asked Hager if he knew where Burbank was. Hager answered he did not. Then counsel asked "Isn't it a fact that Burbank was found in a trunk, dead, in an automobile at Lambert Airport in St. Louis, on April 11, 1969?" A. "I don't know, I haven't saw him since the latter part of 1968."

■ In argument government counsel referred several times to the "mysterious Burbank" and asked, rhetorically, why Burbank had not been brought in to support Hager's story. We think the manner of Burbank's death was irrelevant and perhaps inflammatory against Hager. It should not have been suggested, and assuming that government counsel knew he was dead, counsel should not have suggested in argument that Hager should have produced him. No objection was interposed to either the question or the argument.

If the case were close, a new trial might be required. The case against Hager, however, was strong, his story improbable and discredited by the testimony of a neighbor who saw him regularly on the premises, by his own inconsistent explanation given to the officers, November 13, by the observation of what appeared to be the same car parked at Hager's home November 6th. Our reading of the record has convinced us that the jury could not have conscientiously decided to acquit, and that there is no reasonable possibility that

the verdict resulted from the suggestion of the manner of Burbank's death or the references in argument to his absence.[4]

The judgment is affirmed.

---

4. See United States v. Fidanzi, 411 F.2d 1361 (7th Cir., 1969), United States v. Gross, 451 F.2d 1355, 1359 (7th Cir., 1971).