**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Joseph Earl DILTS and Larry E. Cravens,**
**Defendants-Appellants.**

**Nos. 73-1827, 73-1828.**

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1974.

Decided July 9, 1974.

**532**

Warren Lupel, Chicago, Ill., for defendants-appellants.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS, STEVENS and SPRECHER, Circuit Judges.

PER CURIAM.

A jury found both appellants guilty of eight separate violations of 18 U.S.C. §§ 2314 and 2.[1] The indictment charged the defendants with causing the interstate transportation of eight forged checks. Each check was purportedly drawn by the Safeco Insurance Company on the Boatmen's National Bank of St. Louis, and made payable to John R. Stack; six of the checks were in the amount of $168.03 and two were for $987.72.

The evidence showed that the appellants, together with the government's witness Baker, decided in December, 1972, to make some money by utilizing blank Safeco checks in the possession of Dilts. Checks were then cashed at eight different business establishments in the Southern District of Illinois. Four were cashed in Peoria, two in Moline, and two in Pekin. It was stipulated that, had the government called him as a witness, John R. Stack would have testified that a Selective Service card and two Bradley University identification cards were stolen from his place of residence. The record also disclosed that documents answering this description were found in a search of Dilts' residence.

Appellants advance four arguments for reversal: (1) that it was error to permit the prosecutor to use a misdemeanor conviction to impeach a defense witness; (2) that they were deprived of a fair trial by the judge's cross-examination of that witness; (3) that the evidence described only one offense rather than eight separate offenses; and (4) that the prosecutor's reference to the indictment of appellant Craven for another offense was reversible error.

---

1. 18 U.S.C. § 2314 provides, in pertinent part:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited

\*  \*  \*  \*  \*

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

18 U.S.C. § 2 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Counts One and Two also charged a third defendant. He was tried and convicted at the same trial. He has been sentenced as a youthful offender and has not appealed.

## I.

■ After having asked the witness Toland about his four felony convictions, the prosecutor asked whether he had been found guilty of disorderly conduct, a misdemeanor. It was error for the court to allow such a question, but it was unquestionably harmless.

While any recent felony conviction may be used to impeach a witness,[2] in the case of misdemeanors, "most courts have . . . require[d] that . . . the offense . . . be one involving 'moral turpitude.'" McCormick, Evidence, § 43, at 85 (2d ed. 1972). The circuits are divided on the extent to which the rule should be followed;[3] the Third Circuit applies the rule, chosen by the Advisory Committee on the Proposed Rules of Evidence for the Federal Courts,[4] that misdemeanors must amount to *crimen falsi*.[5] We need not decide whether to follow the rationale of the Third Circuit, for, even under the "moral turpitude" standard, the disorderly conduct conviction should not have been used to impeach the witness here. If selling amphetamines without prescriptions and obstructing police officers have not been considered to be misdemeanors involving moral turpitude,[6] disorderly conduct is certainly not such

a crime. It was error to allow the impeachment.

Nevertheless, it is clear that the error was harmless. Since the witness had already been impeached with four felony convictions, the introduction of a misdemeanor conviction which produced only a $40 fine was, at most, merely cumulative. Since the evidence of guilt is unusually strong, we have no doubt that the error was harmless under the test enunciated in Kotteakos v. United States, 328 U.S. 750, 764,[7] 66 S.Ct. 1239, 1248, 90 L.Ed.2d 1557.

## II.

Appellants argue that the extensive questioning of the witness Toland by the trial judge deprived them of a fair trial.

Toland shared an apartment with one Larry Baker during December, 1972, the month in which the check forgeries were alleged to have occurred. During that month, a party was held at the apartment; the appellants were among those present. Toland testified that Baker went into the bedroom and returned with a box containing a check protector and some papers. He then testified that Baker asked the appellants and their co-defendant at trial "if they wanted to get into this check thing with him, to see if they could make some money. And Larry and Earl denied it."[8]

2. See United States v. McCarthy, 445 F.2d 587, 590–591 (7th Cir. 1971).

3. For example, the Fifth and Sixth Circuits follow the rule as McCormick has enunciated it. See Myers v. United States, 377 F.2d 412, 423 (5th Cir. 1967); United States v. Conder, 423 F.2d 904, 911–912 (6th Cir. 1970). The Fourth and Tenth Circuits follow it except to the extent of permitting impeachment by petit larceny if it is a criminal case. See United States v. Pennix, 313 F.2d 524, 531 (4th Cir. 1963); Butler v. United States, 408 F.2d 1103, 1104 (10th Cir. 1969). The Ninth Circuit forbids impeachment by misdemeanors in any event. See Johnson v. United States, 424 F.2d 537 (1970).

4. See Rule 609 and the Committee commentary.

5. See United States v. Evans, 398 F.2d 159, 164 (1968). Cf. Gordon v. United States,

127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967) (Burger, J.) for a discussion of the reasons why impeachment of an accused who testifies ought to be only by those prior convictions bearing upon honesty and veracity. The "rule of thumb" proposed in that case was not adopted as a *per se* limitation on the district judges in this circuit. See United States v. Cox, 428 F.2d 683, 689 (1970); United States v. Escobedo, 430 ' F.2d 14 (1970). But see the concurring opinion of Judge Kiley in *Escobedo*, 430 F.2d at 21–22.

6. See Myers v. United States, *supra*, and Johnson v. United States, *supra*.

7. The Court there stated: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. . . ."

8. Tr. 198.

On cross-examination, the prosecutor asked nothing about this party, choosing only to impeach the witness with his criminal record. The trial judge, however, sought to elicit from the witness the date of the party, presumably to see if it was before the 20th of December, the first of the dates named in the indictment. The witness testified that, although he could not specify the date, to the best of his knowledge it was in the second week of December, that is, between the 10th and 16th of the month. Thereafter, the judge continued to question the witness, in a manner the appellants not unfairly label cross-examination. In all, the judge's questioning occupies eight pages of the transcript.

■ Although the duty of the trial judge to exercise his control of a trial in an impartial manner is beyond dispute,[9] it is difficult "for an appellate court to determine from a reading of words spoken at trial whether questions by the judge had the effect of unfairly disparaging the defense."[10]

■ In United States v. Tobin, 426 F.2d 1279 (7th Cir. 1970), we held that the trial judge's cross-examination of a critical defense witness required reversal; in that case, as Judge Hastings pointed out, the judge's "line of questioning went to a critical element of the defense" and the "question of guilt [was] a close one." Id. at 1282. In this case, however, we do not regard the question of guilt as close, and it is clear that the judge's examination of Toland did not relate to one of the central questions before the jury. The precise date of the party at Toland's apartment was less important to the defense than the testimony about what was said at the party. Moreover, even if the jury had believed that Toland was telling the truth about what the appellants said, that would not establish their innocence if the jury also believed the government's testimony concerning the appellants' actions. We are satisfied that the judge's questioning related to a collateral matter, and even if it revealed a somewhat skeptical attitude toward the veracity of Toland, it does not warrant reversal.

### III.

Appellants argue that the trial court erred in treating the negotiation of each check as a separate violation of § 2314.[11]

Ever since the Supreme Court's per curiam decision in Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L. Ed.2d 75, it has been clear that a single transportation of several securities constitutes only one violation of § 2314.[12] In the present case, however, each of the eight counts charged that a forged check was cashed at a different time and at a different place. Since each interstate transportation was therefore initiated at a different time and place, there is no reason to assume that all of the forged instruments traveled to the drawee bank in the same conveyance.

The circuits are divided on the question whether different violations of the

---

9. See Quercia v. United States, 289 U.S. 466, 469–470, 53 S.Ct. 698, 77 L.Ed. 1321.

10. United States v. Grunberger, 431 F.2d 1062, 1067 (2d Cir. 1970). We also agree with the passage from Judge Moore's dissent in United States v. Guglielmini, 384 F.2d 602, 608 (2d Cir. 1967) quoted by Judge Waterman in Grunberger: "[E]very judge has his own individual manner of conducting a trial and, of necessity, must have great leeway in so doing. Even appellate decisions cannot reduce the judicial personality to a common colorless denominator." Ibid.

11. Although the appellants claim that error resulted when the district court sentenced them, the cases cited in their brief make clear that they are questioning indictment and prosecution for separate offenses as well. If the indictment was proper, as we understand the substance of the argument, no question concerning whether the court abused its discretion in sentencing arises.

12. In Castle, the defendant carried five forged American Express Company money orders on his person on a trip from Indiana to Texas. The Court of Appeals had held that each forged money order constituted a separate offense under § 2314. See 287 F. 2d 657 (5th Cir. 1961). In its one paragraph opinion, the Supreme Court relied upon Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905.

statute are proven if the evidence merely establishes that the interstate transportation of different forged securities commenced at different business establishments. In Amer v. United States, 367 F.2d 803 (1966), the Eighth Circuit held that different negotiations were different violations of § 2314. In Gilinsky v. United States, 368 F.2d 487 (1966), however, the Ninth Circuit set aside a conviction based on evidence that different forged checks, though cashed at different business establishments, had traveled in the same pouch from the State of Washington to Kentucky. The court concluded that "[c]hance or circumstance . . . [came] to the aid of a wrongdoer . . . [because] the federal crime with which we are here concerned proscribes not the passing but rather the transportation of forged checks." 368 F.2d at 490.

In this case there is no reason to assume that the different checks traveled across state lines in the same pouch. Moreover, we agree with the Eighth Circuit that "the units of criminal prosecution [should not be] made dependent upon the happenstance of bank transmission procedure . . . ." Amer v. United States, *supra,* 367 F.2d at 805. In United States v. Driscoll, 454 F.2d 792, 801 (1972), the Fifth Circuit, although citing *Gilinsky* but not *Amer,* held that the number of offenses under § 2314 is governed by the number of in-stances of passing forged checks. In a lengthy analysis of the same issue, Judge Kaufman reached the same result in Ketchum v. United States, 327 F. Supp. 768, 773–776 (D.Md.1971).

█ If all of the instruments had been negotiated at the same time and place, it would be reasonable to infer that only one transportation would ensue and, therefore, that only one offense was committed. On the facts disclosed by this record, however, we hold that since the indictment alleged eight separate instances of negotiating forged securities, it alleged eight separate violations of § 2314.

## IV.

█ The prosecutor commenced his cross-examination of the defendant Cravens by asking if he was under indictment for intimidating a witness who had testified in the government's case-in-chief. Defense counsel objected and the district court sustained the objection; the witness, perhaps not understanding the significance of the judge's action, nevertheless answered in the affirmative. The court denied the defendants' motion for a mistrial.[13] No special curative instruction was either sought or given.

█ An indictment is a charge, nothing more. It is, therefore, plainly improper to bring to the jury's attention that a witness has been indicted.[14] Nev-

---

13. "By Mr. Lipkin:

Q Mr. Cravens, you are under indictment in this court, are you not, for attempting to intimidate Wasson so that he wouldn't tell the truth at the last trial?

MR. HAMM: If the Court please—

THE COURT: Objection will be sustained.

MR. HAMM: I am going to ask that a juror be withdrawn from the jury box.

THE COURT: Motion will be denied.

THE WITNESS: Yes, sir, I'm under the indictment.

MR. HAMM: Mr. Cravens, the objection was sustained.

THE WITNESS: Yes, thank you." Tr. 246

14. "A witness may not be asked if he has been *accused* or *arrested* for a crime, for the sufficient reason that it calls for hearing evidence, and because accusation carries no implication of guilt." Coulston v. United States, 51 F.2d 178, 182 (10th Cir. 1931). "This rule is based upon a clear recognition of the fact that the probative value of such evidence is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury against the defendant that total and complete exclusion is required in order that the right to trial by a fair and impartial jury may not be impaired." United States v. Pennix, *supra,* n. 3, 313 F.2d at 529. Compare Ewing v. United States, 386 F.2d 10, 15 (9th Cir. 1967), in which the prosecution adduced facts showing the attempted bribery of a government witness by defendant, before trial. Even the proof of facts of misconduct, however, is not universally accepted. See McCormick, Evidence, § 42, at 82–83.

ertheless, we are not persuaded that reversible error resulted from the question. The fact that the trial judge sustained an objection would tend to establish its impropriety in the jury's mind. We cannot say that the perception of an experienced trial judge that the circumstances were not such as to warrant a mistrial was incorrect.

Our appraisal of the significance of the improper question is complicated by the oral argument which the Assistant United States Attorney presented before us. Going completely outside the record, counsel sought to justify his trial conduct by giving us an extended account of the other crimes for which appellants have been either indicted or convicted, and of which he personally believed them guilty. This argument was patently improper; the extent to which criminal defendants are charged with other illegal activity has no bearing on the merits of this proceeding.[15]

This kind of argument is entirely inappropriate "from counsel who are engaged, with [us], in administering justice." United States v. Ott, 489 F.2d 872, 874 n. 2 (7th Cir. 1973). It becomes neither this court nor the United States, whom counsel was representing. See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314. We have previously felt compelled to criticize this Assistant United States Attorney for departing from the record.[16] In view of this history, we have considered the need for an exercise of our supervisory power as a deterrent to deliberate prosecutorial misconduct. Cf., United States v. Trutenko, 490 F.2d 678, 681 (7th Cir. 1973). We have concluded, however, that since the flagrant misconduct occurred before us, rather than in the trial court,[17] these judgments should

not be reversed. We trust that we will not have to appraise the same issue in any future case.

The judgments are

Affirmed.

---

15. Similarly, the fact that they have been convicted of other crimes subsequent to the trial in question is not relevant. The fairness of the trial is judged by the circumstances extant at the time of trial.

16. See United States v. Hernandez, 486 F.2d 614, 618 (7th Cir. 1973).

17. In United States v. Ott, *supra*, the prosecution had misrepresented a material fact to the district court and, on appeal, government counsel failed to bring the correct facts to our attention on his own initiative.