**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Norman Z. FLICK,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James R. PIERCE,**
**Defendant-Appellant.**

**Nos. 74–1552, 74–1553.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1975.

Decided May 15, 1975.

Rehearings and Rehearings En Banc
Denied June 18, 1975.

490

William C. Erbecker, Philip R. Melangton, Jr., Indianapolis, Ind., for defendants-appellants.

Stanley B. Miller, U. S. Atty., William F. Thompson, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CLARK, Associate Justice,* HASTINGS, Senior Circuit Judge, and STEVENS, Circuit Judge.

HASTINGS, Senior Circuit Judge.

Norman Z. Flick and James R. Pierce were charged in an eighteen count indictment with conspiracy and seventeen substantive violations of Title 18, U.S.C. § 2314. Named as unindicted co-conspirators in Count I, the conspiracy count, were Ronald Dee Wilkins, Larry Elwin Carter, Mary E. Pollard, a/k/a Mary Cavendish, Mary Carroll Goff, Patricia S. English, a/k/a Patricia Hinesley, a/k/a Patricia Sue Stolis, and Robert Alvin Knowles. Various unindicted co-conspirators were named as unindicted co-defendants in the substantive counts, as will later appear herein.

The violations involved the transportation in interstate commerce of falsely made and forged securities. These were business and personal checks drawn on banks located in Texas and California. The checks concerned traveled from Indianapolis, Indiana, to Corpus Christi, Texas, and Anaheim, California.

Following a trial by jury, defendant Pierce was found guilty on the conspiracy charge in Count I and also on Counts II, III, V, VI and XVII of the substantive charges. He was found not guilty on Counts IV, VII, IX, X, XI, XII, XIII, XIV, XV, XVI and XVIII of the substantive charges.

Defendant Flick was found guilty on Counts VIII, IX, X, XI, XII, XIII, XIV and XVI of the substantive charges. He was found not guilty on the conspiracy charge in Count I, and on Counts XV, XVII and XVIII of the substantive charges.

Defendants Pierce and Flick were not found guilty on any of the same counts.

The trial court entered a judgment of conviction on defendant Pierce as to the respective counts on which guilty verdicts were returned. He was sentenced to imprisonment for a period of 2 years each on Counts II, III and V, the sentences to run consecutively, for a total of 6 years. Sentence was suspended on Counts VI and XVII and probation was imposed for 3 years to run after the completion of sentences imposed on Counts II, III and V. Sentence was suspended as to Count I and probation was imposed for 3 years to run concurrently with the probation imposed on Counts VI and XVII.

Judgment of conviction was entered on defendant Flick as to the respective counts on which guilty verdicts were returned. He was sentenced to imprisonment for a period of 2 years each on Counts XI, XII and XIII, to run consecutively, for a total of 6 years. Sentence was suspended on Counts XIV and XVI and probation was imposed for a period of 3 years to run after the completion of sentences imposed on Counts XI, XII and XIII. Sentences of imprisonment of 2 years each were imposed on Counts VIII, IX and X but were suspended and probation was imposed for a period of 3 years to run concurrently with the probation imposed on Counts XIV and XVI.

In sum, defendants Pierce and Flick received the same aggregate sentences, viz.: 6 years of imprisonment, suspended sentences on other guilty verdicts, and 3 years of probation.

Each defendant has appealed. Each was represented at trial by privately retained counsel. Defendant Flick is represented on appeal by substituted privately retained counsel. Defendant Pierce is represented on appeal by his trial counsel who has now been appointed by this court pursuant to the Criminal Justice Act.

The record and the transcript of the evidence are voluminous. The separately filed briefs for each defendant, as well

---

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States, is sitting by designation.

as that for the government, deserve no marks for brevity. Almost every known type of pre-trial, in-trial and post-trial motion was filed, briefed and argued below. The same may be said concerning the separate issues raised by each defendant on appeal. In short, we shall attempt to cut through this maze as best we can and reduce these appeals to their essential elements. Credible evidence was introduced by the government supporting the following narrative statement.

---

We are concerned here with the often tried and seldom successful scheme of check kiting. Approximately $82,000 in worthless checks drawn on banks in Texas and California were deposited in Indianapolis banks. It generally required seven to ten days before the out-of-state checks so deposited reached the banks on which they were drawn. In the interim, much of the money deposited in the Indianapolis banks was withdrawn before notice was received from the Texas and California banks that the checks were worthless. As a result, of the $82,000 in such worthless checks deposited in Indianapolis banks over a period of about one month (July 31, 1973 to August 23, 1973), defendants Flick and Pierce either withdrew, or caused to be withdrawn, $40,000 in funds from the Indianapolis banks on the worthless checks which had been deposited.

Three checking accounts belonging to the Guaranty National Bank and Trust Company of Corpus Christi, Texas (Guaranty National), and one account in a branch of the Bank of America at Anaheim, California, were used as the out-of-state checking accounts in the scheme.

(1) One of the accounts in Guaranty National was opened in the name of Diversified Carpet and Rug Cleaning Company (Diversified) by William Gourley and two of his brothers on May 19, 1971, at the Bank of Commerce at Corpus Christi, later merged with Guaranty National. The account was closed on October 28, 1971, when the Gourleys went out of business. Ten Diversified checks are concerned here. Eight of the Diversified checks served as the basis for the substantive charges in Counts II, III, V, VI, XIII, XIV, XV and XVIII. Two others were introduced as evidence at the trial.

(2) A second checking account was opened at Guaranty National by John N. Ulrey (Ulrey) on October 12, 1971. The account was closed on December 22, 1971. Seven Ulrey checks are concerned here. Six of the Ulrey checks constituted the basis for Counts IV, VII, IX, X, XI and XVI of the substantive charges, and the seventh was introduced into evidence.

(3) A third checking account was opened at Guaranty National in the name of Big Moe's Inferno by John Ulrey on October 22, 1971, and closed on December 22, 1971. There was only one Big Moe check involved in this case and it served as the basis for the substantive charge in Count XII.

(4) The fourth checking account was opened in the name of Betty J. Hill and Cynthia Hill (Hill) at a branch of the Bank of America in Anaheim, California, on May 6, 1972. It was closed on June 9, 1973. Two Hill checks were involved in this trial and served as the basis for substantive charges in Counts VIII and XVII.

The worthless out-of-state checks were deposited in six different checking accounts at four different banks in Indianapolis. All six of these accounts were closed after the parties involved failed to make restitution. Three of such checking accounts were maintained at the Indiana National Bank and one each in the Peoples Bank and Trust Company, the Merchants National Bank and the American Fletcher National Bank.

(1) One personal checking account was opened at the Indiana National Bank by Ronald Wilkins on December 22, 1972. There was little activity until the deposit there of two Diversified checks and one Ulrey check during the first three weeks

of August 1973. The total of these deposits was $10,426 of which $10,423 was withdrawn before the Indiana National Bank received notice that the three checks were worthless. It was the bank's policy to permit customers to draw on checks immediately after their deposit. Wilkins made no restitution on the checks. Counts II, III and IV involved Wilkins' account.

(2) Another checking account at the Indiana National Bank was opened by Larry Carter on August 1, 1973. During the first two weeks of August 1973 Carter deposited $13,428 in out-of-state checks, of which $7,927 was withdrawn before the bank received notice that the checks were worthless. Two Diversified checks and one Ulrey check were deposited in this account and formed the basis of Counts V, VI and VII. A fourth Ulrey check was also deposited in this account. Carter made no restitution. The account was closed October 24, 1973.

(3) A third checking account was opened in the Indiana National Bank on July 31, 1967, by Mary E. Pollard. One Hill check and two Ulrey checks were deposited in this account during the last week in August 1973. These checks constituted the basis for Counts VIII, IX and X of the indictment. A total of $17,550 in worthless checks was deposited in this account and $8,555 was withdrawn before the bank received notice that the checks were worthless. The account was closed when no restitution was made on the Ulrey and Hill checks.

(4) A business checking account at the Peoples Bank and Trust Company was maintained by defendant Flick. He opened this account on July 18, 1972, in the name of Z. Savage Company. It was closed on June 27, 1973, for inactivity. The account was reopened on August 17, 1973, with the deposit of one Ulrey check. During the next nine days, Flick deposited two Diversified checks and one Big Moe check in this Savage account. These out-of-state worthless checks totaled $22,757 and are the basis for Counts XI, XII, XIII and XIV of the substantive charges. Flick withdrew a total of $13,216 before the bank received notice that the deposited checks were worthless. The account was closed on August 28, 1973, when Flick refused to make restitution. None has yet been made. The Peoples Bank had the same policy as the Indiana National to permit withdrawals on checks immediately after their deposit.

(5) A checking account used by defendants Flick and Pierce was opened at the Merchants National Bank by Patricia S. English on February 23, 1973. During the last week in August 1973 English deposited in her account one Diversified check and one Ulrey check, for a total of $10,050. On August 28, 1973, English withdrew $3,000 in the form of $300 in cash and a $2,700 cashier's check. Three days later, on August 31, 1973, English returned the $300 in cash and the $2,700 cashier's check to the bank. No other withdrawals were made on the English account and the bank sustained no loss.

(6) The last account defendants used in their scheme belonged to Richard Lee Bruce who opened a checking account at the American Fletcher National Bank on February 26, 1973. Bruce was an illiterate. One Hill check and one Diversified check were deposited in the Bruce account on August 22 and 23, 1973, respectively, for a total amount of $9,300. Defendant Pierce attempted a withdrawal of funds from this account and was rebuffed. The bank suffered no loss. The two checks were concerned in Counts XVII and XVIII of the indictment.

Over a period of seven weeks, with about three weeks of necessary interruptions for a variety of reasons, this case required approximately four weeks of jury trial time. Fifty-seven witnesses were called to the stand. About two hundred exhibits were introduced into evidence. The transcript of the proceedings consisted of more than 3,300 pages. Each of the parties has reviewed the proceedings and the evidence in great detail.

We have set out as an appendix to this opinion a chart prepared by counsel to serve as a guide in analyzing each count of the indictment and certain relevant aspects of the trial and outcome as to each indictment. References to the chart will show that Pierce and Flick were charged together in the conspiracy count and in eleven substantive counts. Only one of them was found guilty in each of the convictions on those joint charges and both were found not guilty on two of them. Pierce alone was charged in six substantive counts and was found guilty on four of them and not guilty on two of them. The checking accounts, the checks deposited with their respective exhibit numbers and deposit dates are specifically shown.

We have considered the evidence with particularity concerning the Wilkins, Carter, Pollard, Z. Savage, English and Bruce transactions, together with other conduct of the defendants involved in the scheme to defraud. We have noted the disagreements of the parties relative to the evidence and its implications.

■ However, upon consideration of the briefs of all parties, the oral argument and the record as a whole, we have concluded there is sufficient evidence to sustain the jury's verdict on each of the counts on which each of the defendants was convicted. In so holding, we necessarily reject the contention by Pierce that there were two separate and distinct conspiracies, one among Wilkins, Carter and Pierce, and another among Flick, Pollard and English, and that no connection was shown between Pierce and Flick. Pierce's reliance upon Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and United States v. Varelli, 7 Cir., 407 F.2d 735 (1969), in this respect is misplaced. The evidence here shows a conspiracy common to both defendants which was executed at their direction. The fact that Pierce may have originated the scheme does not preclude the fact that he included Flick after establishing that the scheme would work. Thereafter,

they both participated in a variety of ways in furtherance of the scheme. They merely used others as their operatives to carry out the scheme. The agreement to carry out the scheme is readily shown by their concert of action. United States v. Zuideveld, 7 Cir., 316 F.2d 873 (1963), cert. denied, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964). Cf. Varelli, supra, 407 F.2d at 741–742. See also, United States v. Hutul, 7 Cir., 416 F.2d 607, 617–620 (1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 (1970); United States v. Robinson, 7 Cir., 470 F.2d 121, 123 (1972). We hold here that the evidence supports a finding of a single conspiracy. Alternatively, if two conspiracies were shown, any resulting prejudice was harmless. United States v. Hutul, supra, 416 F.2d at 619. We have considered Flick's separate contentions on lack of sufficient evidence to sustain his convictions on the counts where he was found guilty and find them unpersuasive. Furthermore, we find no merit in the contention of either defendant that the trial court erred in denying a motion for acquittal.

■ Pierce contends that the trial court prejudicially erred in refusing to grant him severance and a separate trial from Flick on his pre-trial and post-trial motions for such relief. We have held that the defendants participated in a single conspiracy; that there was no resulting harmful prejudice in any event; that the evidence was sufficient to sustain the convictions; and that neither defendant was entitled to a judgment of acquittal. Since Pierce was convicted on the conspiracy count and each defendant on certain substantive charges it is obvious without further consideration that the trial court did not abuse its discretion in denying the severance and separate trial. United States v. Cervantes, 7 Cir., 466 F.2d 736, 738–739, cert. denied, 409 U.S. 886, 93 S.Ct. 108, 34 L.Ed.2d 143 (1972); United States v. Kahn, 7 Cir., 381 F.2d 824, 838–839, cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967). Defendant Flick did not file a motion for severance in the trial court

and he may not claim the severance issue as the basis for reversal on appeal for the first time. We hold that the trial court properly denied Pierce's motion for severance and a separate trial.

■ Both defendants claim that the government offered proof of other offenses at the trial and that this constituted reversible error. In substance, this relates primarily to the introduction of certain checks passed by Pierce in intrastate commerce and to threats by Pierce to witnesses who could testify against him. As a general rule, of course, pattern evidence is admissible to prove motive, intent, guilty knowledge and kindred elements. See, *e. g.,* United States v. Hager, 7 Cir., 461 F.2d 321, 323 (1972). We have examined the record and find that such checks were properly offered and considered in all, except possibly one instance, as samples of Pierce's undisguised handwriting. They were properly received and used for relevant purposes.

■ There is considerable doubt whether the issue of Pierce's threats is properly before us, but we shall consider it. The evidence shows that Pierce threatened Carter, Wilkins and Knowles; each of whom was an unindicted co-conspirator in the indictment against Pierce and participated as above shown in effectuating the scheme at issue. The trial court held a hearing outside the presence of the jury on the issue of introducing evidence in chief by the government of threats made to the witnesses by defendant Pierce. Judge Steckler made a hurried but thorough research of the authorities and upon his return to the courtroom read them at length and commented upon them to counsel. (Transcript pp. 898–906). See, *e. g.,* 22A C.J.S. Criminal Law § 633 (1961); 31A C.J.S. Evidence § 293 (1964); Annot., 62 A.L.R. 136 (1929) and cited jurisdictions following the rule, including Indiana, Adams v. State, 194 Ind. 512, 141 N.E. 460 (1923); 29 Am.Jur.2d Evidence § 293 (1967). See also a supplemental authority cited by the government, United States v. Gimelstob, 3 Cir., 475 F.2d 157, 160, cert. denied, 414 U.S. 828, 94 S.Ct.

49, 38 L.Ed.2d 62 (1973). All of this fully supports the holding of the trial court that such evidence was admissible. A threat is said to be at least an attempt to conceal evidence bearing upon a defendant's guilty knowledge. In the case of potential prosecuting witnesses it may also be regarded as an admission of guilt. The evidence elicited concerning threats made to these unindicted co-conspirators was relevant to the issues in the case. The careful trial judge went to great length to protect the rights of the defendants. He did not err in admitting the evidence of other offenses here.

■ Defendants each charge that the trial court erred in treating certain pairs of substantive counts as separate and distinct violations of § 2314, whereas in fact and in law they constituted but a single offense. The primary reliance on this contention is the holding in Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961).

Pierce was convicted on each of Counts II, III and V and sentenced to serve consecutive terms of 2 years on each of them. The *imposition* of sentences on Counts I, VI and XVII was suspended and he was placed on probation for 3 years commencing *after* the completion of sentences on Counts II, III and V. He claims the trial court erred in overruling his motion at the close of the government's case to dismiss or to require an election between counts and in submitting all of such multiplicious counts to the jury. Further, Pierce claims the court erred in sentencing him on each of Counts II, III, V and VI.

Pierce further says that the checks (Govt. Ex. 2A and 5A) upon which Counts II and V were based, were both deposited at Indiana National and were both transported and received by Guaranty National on the same date, August 6, 1973. He further says that the checks (Govt. Ex. 3A and 6A) upon which Counts III and VI were based were both deposited at Indiana National and were both transported to and received by

Guaranty National on the same date, August 7, 1973.

The government counters by stating there is ample evidence in the record to distinguish the Count II transaction from that in Count V, and to distinguish the Count III transaction from that in Count VI. The check (2A) in Count II was written on July 28, 1973, deposited in the Wilkins account on July 31, 1973, and arrived at its destination in Texas on August 6, 1973. By contrast, the check (5A) in Count V was written two weeks earlier, on July 26, 1973, and deposited in a different account, the *Carter account,* one day later, on August 1, 1973, and arrived at its destination on August 6, 1973. Each check was in a different amount, written on a different day, and deposited in a different account on a different day. The only thing the checks have in common is that they were processed on the same day at the bank in Texas. There is no evidence that they were transported in the same pouch together, or that they arrived at the bank together.

Similarly, the check (3A) of Count III was written on August 3, 1973, and deposited on the same date in the *Wilkins account* at Indiana National, and processed by the bank in Texas on August 7, 1973. By contrast, the check (6A) on Count VI was written the day before, on August 2, 1973, deposited on August 2, 1973, in a different account, the *Carter* account, and was processed at the bank in Texas on August 7, 1973. Again, the checks were in different amounts, written on different days and deposited in different accounts, although on the same day. Here, although processed on the same day at the bank in Texas, the record is silent on whether they were transported in the same pouch together, or whether they arrived at the bank together.

We have examined these respective exhibits and they reflect the above summarization. We have concluded that there are sufficient distinguishing fac-

tors between each pair of checks to constitute a separate transaction. Our court recently considered an analogous situation in United States v. Dilts, 7 Cir., 501 F.2d 531, 534–535 (1974). In that case, our court compared *Castle, supra,* and noted the holdings in related federal cases, both pro and con. We held that under the facts disclosed by the record, since the indictment alleged eight separate instances of negotiating forged securities, each negotiation having been effected at a different time and place, it alleged eight separate violations of § 2314. So, here, each of the checks was negotiated at a different time and place and, therefore, the defendant is responsible for causing separate interstate transportations to take place even if we assume that, for reasons unrelated to his own wrongful conduct, two checks may actually have traveled across state lines in the same interstate carrier. These transactions are clearly distinguishable from the single offenses involved in *Castle* and Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

■ Defendants further contend that they were denied a fair trial because of prejudicial newspaper publicity, but even the brief for defendant Pierce admits that the publicity here could only be grounds for reversal if combined with other errors. The only evidence of publicity in the record are seven newspaper articles, two of which are identical, which were printed in Indianapolis daily newspapers. The articles are short and factual and are largely just reports of court proceedings or other matters of public record. Other articles to which defendant Flick refers which were not made a part of the record below, including some which were printed after the trial had ended, may not be considered here.

Prospective jurors were asked on voir dire whether they had read any articles about the case or the defendants. Only one juror said he had seen an article but he said that he had only glanced at it and could not recall its contents. The

juror was not challenged by defendants. Repeatedly during trial the court instructed the jurors that they were under a duty not to read newspaper accounts or listen to radio broadcasts or telecasts regarding the trial. There is no evidence that those instructions were disregarded. Defendants were not deprived of their right to have their cases decided by an impartial jury.

We have examined all of the other issues raised by defendants and find them also to be without merit.

The judgments appealed from are, in all respects, affirmed.

Affirmed.

# APPENDIX

## Chart—Guide For Indictment

| COUNT | DEFENDANT CHARGED | GUILTY VERDICT | CHECKING ACCOUNT | CHECK DEPOSITED | EXHIBIT NUMBER | DEPOSIT DATE |
|---|---|---|---|---|---|---|
| I (1) | [1]P & [2]F | P | | | | |
| II (2) | P | P | Wilkins | Diversified | 2A | 7-31-73 |
| III (3) | P | P. | Wilkins | Diversified | 3A | 8- 3-73 |
| IV (4) | P | [X] | Wilkins | Ulrey | 4 | 8-20-73 |
| V (5) | P | P | Carter | Diversified | 5A | 8- 1-73 |
| VI (6) | P | P | Carter | Diversified | 6A | 8- 3-73 |
| VII (7) | P | [X] | Carter | Ulrey | 7A | 8-10-73 |
| VIII (8) | P&F | F | Pollard | Hill | 8A | 8-22-73 |
| IX (9) | P&F | F | Pollard | Ulrey | 9A | 8-23-73 |
| X (10) | P&F | F | Pollard | Ulrey | 10A | 8-28-73 |
| XI (11) | P&F | F | Z. Savage Co. | Ulrey | 11A | 8-17-73 |
| XII (12) | P&F | F | Z. Savage Co. | Big Moe | 12A | 8-20-73 |
| XIII (13) | P&F | F | Z. Savage Co. | Diversified | 13A | 8-21-73 |
| XIV (14) | P&F | F | Z. Savage Co. | Diversified | 14A | 8-24-73 |
| XV (15) | P&F | [X] | English | Diversified | 15A | 8-24-73 |
| XVI (16) | P&F | F | English | Ulrey | 16A | 8-28-73 |
| XVII (17) | P&F | P | Bruce | Hill | 17A | 8-22-73 |
| XVIII (18) | P&F | [X] | Bruce | Diversified | 18A | 8-23-73 |

[1]Defendant-Appellant Pierce

[2]Defendant-Appellant Flick