**UNITED STATES of America, Plaintiff,**

v.

**Peter A. MAKRES, Defendant.**

**No. 82 CR 848–1.**

United States District Court,
N.D. Illinois, E.D.

June 8, 1990.

David E. Bindi, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Robert S. Bailey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

In 1982, pursuant to Fed.R.Crim.P. 20, defendant Peter Makres pleaded guilty to a five-count indictment alleging transportation of forged checks in violation of 18 U.S.C. § 2314. Each count involved a separate check, but the checks involved in the first four counts were all drawn on the same account and cashed on May 21, 1982 in Greensboro, North Carolina. Presently, defendant apparently concedes that each of the four checks was cashed at a different bank.[1] The parties apparently agree that, to the extent it is found to be relevant, a hearing is necessary to determine if the checks related to the challenged counts were all forwarded to the drawee bank in Illinois in a single shipment. As is discussed below, the relevant fact is the manner of the transactions, not the actual transportation, and, in any event, there is no legal basis for holding a hearing to add to the record of the guilty plea hearing.

Makres was originally sentenced to six months' work release on Count One and a five-year probationary period on Counts Two through Five. Four years later, probation was revoked on Counts Two through Four and consecutive sentences of ten years each were imposed for those three counts.[2] The new sentence was affirmed on appeal. *United States v. Makres*, 851 F.2d 1016 (7th Cir.1988). In his present Rule 35(a) motion,[3] defendant claims it was illegal to impose consecutive sentences on Counts Two through Four.[4]

---

1. As is discussed below, the government argues that the proffer at the time of the guilty plea shows the checks were cashed at different banks in Greensboro. In his reply Makres states, "The government's memorandum proceeds to the discussion of the facts of the case, such as they may be deduced from the record. The discussion appears dedicated to demonstrating the proposition that Makres negotiated the checks drawn on an Illinois bank separately in North Carolina. We have no quarrel with that; we conceded that."

2. The sentences were imposed by another judge of this court. That judge also sentenced Makres on a number of other § 2314 charges involving the passing of forged checks outside North Carolina.

3. Since the offenses involved in this case occurred prior to November 1, 1987, the former version of Fed.R.Crim.P. 35(a) applies to this case. That Rule provides, in part, that "the court may correct an illegal sentence at any time."

4. Defendant does not challenge the conviction on Count One, perhaps because the sentence imposed has already been served. Even if not raised by the defendant, a court is obliged to correct illegal sentences. *Lee v. United States*, 400 F.2d 185, 188 (9th Cir.1968); *United States*

He argues that § 2314 punishes the interstate transportation of forged checks, not the forging or passing of checks. Thus, the argument goes, if the four checks were transported from North Carolina to Illinois [5] in a single shipment, he can only be sentenced for one violation.

The government argues that defendant has waived this claim because not raised on direct appeal of his sentence nor in an earlier Rule 35(b) motion. Rule 35(a) provides that an illegal sentence may be corrected at any time. It would be inconsistent with that Rule to hold that despite the fact that the Rule can be invoked at any time, issues raised pursuant to that Rule will be considered waived if not raised on direct appeal. Such a position is also inconsistent with the rule that illegal sentences must be corrected *sua sponte* by the court. *See Lee v. United States*, 400 F.2d 185, 188 (9th Cir.1968); *United States v. Allen*, 733 F.Supp. 1186 (N.D.Ill.1990). It is unnecessary, however, to determine if waiver can ever apply to Rule 35(a) motions. It is clear that waiver does not apply when double jeopardy claims are raised under that Rule. *United States v. Baugh*, 787 F.2d 1131, 1132 (7th Cir.1986) (per curiam); *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986). Defendant has not waived the claims raised in this case.

Section 2314 provides, in part,[6] "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; ... shall be fined not more than $10,000 or imprisoned not more than ten years, or both." The Supreme Court has held that one trip involving the personal transportation of five money orders across state lines constitutes a single violation of § 2314. *Castle v. United States*, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961) (per curiam) (vacating 287 F.2d 657 (5th Cir. 1961)). The circuits, however, are split as to what constitutes a separate violation under this statute when the defendant causes another to do the transporting.

In *Gilinsky v. United States*, 368 F.2d 487 (9th Cir.1966) ("*Gilinsky II*"), the defendant, on a single day, passed five forged checks at three locations in Seattle. By chance, two of the checks cashed at two different locations were transported together and the three other checks, all cashed at the same location, were also transported together. The Ninth Circuit held that only two offenses could be charged since the two transportations, not the five passings, were the offense under § 2314. In *United States v. Driscoll*, 454 F.2d 792, 801 (5th Cir.1972), the Fifth Circuit held that passing more than one check in a single transaction could only constitute one violation of § 2314.

It has also been held, or indicated in *dicta*, that happenstance that fraudulent instruments are transported together does not prevent charging a separate § 2314 violation regarding each instrument. In *United States v. White*, 524 F.2d 1249, 1254 (5th Cir.1975), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976), the Fifth Circuit held that negotiating two forged checks several hours apart at the same store constituted two violations of § 2314 even though the instruments were transported to the bank together. The Fifth Circuit considered it to be happenstance that checks negotiated on the same

v. *Allen*, 733 F.Supp. 1186 (N.D.Ill.1990). The facts regarding Count One should also be examined and time already served on that Count should be taken into account if relief is granted.

**5.** The indictment charges the transportation of the checks from North Carolina to Illinois. Thus, facts as to how the checks were transported from Illinois to North Carolina are irrelevant.

**6.** The indictment alleges defendant *caused* the interstate transportation of the checks. Although 18 U.S.C. § 2 is not expressly cited in the indictment, the facts alleged in the indictment actually charge aiding and abetting a § 2314 violation. *See Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). *See also United States v. Perry*, 643 F.2d 38, 45 (2d Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981) (if facts support aiding and abetting charge, it is not necessary to specifically refer to aiding and abetting in indictment).

day and at the same location were transported together and therefore found its prior decision in *Driscoll* to be distinguishable. *See id.* at 1254 n. 1. *Amer v. United States*, 367 F.2d 803 (8th Cir.1966), involved the passing of four checks at four different locations in a city. Defendant contended that at least two of the checks would have been transported in the same mail train. The Eighth Circuit, applying the *Blockburger* test, indicated that each check could constitute a separate offense because each involved proof of distinct facts. The Eighth Circuit also indicated that the passing of each check could be considered a separate "causing" of transportation. This is all *dicta*, however, because the Eighth Circuit upheld the district court's finding that there was inadequate proof any of the checks were transported together. In *Ketchum v. United States*, 327 F.Supp. 768 (D.Md.1971), the defendant passed two checks on the same day but at different locations. The court followed the *dicta* in *Amer* and also held that the defendant was not entitled to relief because he had not proven the two checks had been simultaneously transported. *Id.* at 776.

More recent Eighth Circuit cases indicate a retreat from the *dicta* in *Amer*. In *Cabbell v. United States*, 636 F.2d 246 (8th Cir.1980), defendant was convicted of fifteen counts of violating § 2314. On the same day, he had deposited five stolen money orders at each of three banks in Iowa. All the money orders were drawn on the same bank and all were transported to Denver. There, however, was no evidence as to whether the 15 money orders were actually transported together. Relying on *dicta* in *United States v. Dilts*, 501 F.2d 531, 535 (7th Cir.1974) (per curiam), the court focused on what one would expect to happen to the instruments after they were negotiated. 636 F.2d at 248. If the instruments were deposited together, it should be presumed that they were transported together unless the government proves otherwise. If the instruments were deposited at separate locations, it should be presumed they were transported separately unless the defendant proves otherwise. Since no evidence of the actual transporta-

tion was presented by either side, the presumptions applied and it was presumed that there were three transportations of five checks each. *Id.* The court, however, did not have to decide if this was the proper analysis to apply since, consistent with *White* and *Driscoll*, the simultaneous deposit of five checks constitutes only one offense. Under that approach, there was also only three offenses. *Id.* While the first approach seemed to be the one favored by the court, the court was not required to determine which approach was preferable. In a subsequent case, the Eighth Circuit applied only the first approach. *See United States v. Johnson*, 751 F.2d 291, 293 (8th Cir.1984), *cert. denied*, 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 275 (1985). In that case forged money orders drawn on the same account of a Minnesota bank were cashed at four different banks in Iowa on two consecutive days. Following *Cabbell*, the court held that the burden was on the defendant to show that checks cashed at different banks were transported together. Since defendant had not presented any evidence, conviction and sentencing on four separate counts was held to be proper.

There are also two Seventh Circuit cases on this subject. In *United States v. Dilts*, 501 F.2d 531 (7th Cir.1974) (per curiam), the defendant cashed eight forged checks drawn on the same account of a Missouri bank. The checks, however, were cashed at eight different business establishments in four different cities in the Southern District of Illinois. They were apparently cashed on various days in December 1972. Since there were no facts to indicate the checks were transported together, it was unnecessary to determine the legal effect of simultaneous transportation. *Id.* at 535. Nevertheless, the court indicated agreement with *Amer* that "the units of criminal prosecution [should not be] made dependent upon the happenstance of bank transmission procedure...." *Dilts*, 501 F.2d at 535 (quoting *Amer*, 367 F.2d at 805) (brackets and ellipsis in *Dilts*). The court also indicated agreement with *Driscoll* "that the number of offenses under § 2314 is

governed by the number of instances of passing forged checks." *Dilts*, 501 F.2d at 535. In summary, the court stated,

> If all of the instruments had been negotiated at the same time and place, it would be reasonable to infer that only one transportation would ensue and, therefore, that only one offense was committed. On the facts disclosed by this record, however, we hold that since the indictment alleged eight separate instances of negotiating forged securities, it alleged eight separate violations of § 2314.

*Id.*

The issue was again considered by the Seventh Circuit the following year. *See United States v. Flick*, 516 F.2d 489, 495–96 (7th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975). The issue in that case involved two pairs of checks, each pair of which the defendants claimed were transported together. As regards one of the pairs, there was no evidence they were transported together nor any evidence that they arrived together at the drawee bank. As regards the other pair, the checks were drawn on the same account of a Texas bank and were both deposited at the same Indiana bank. However, they were for different amounts, were written on different days, were deposited in different accounts, and were deposited on two consecutive days. The checks were processed on the same date at the drawee bank in Texas, but the record was silent as to whether they had arrived at the Texas bank together. The court concluded there were "sufficient distinguishing factors between each pair of checks to constitute a separate transaction." *Id.* at 496. The court treated the *dicta* in *Dilts* as a holding and stated, "here, each of the checks was negotiated at a different time and place and, therefore, the defendant is responsible for causing separate interstate transportations to take place even if we assume that, for reasons unrelated to his own wrongful conduct, two checks may actually have traveled across state lines in the same interstate carrier." *Flick*, 516 F.2d at 496.

Defendant argues that the Seventh Circuit decisions in *Dilts* and *Flick* contain *dicta* that need not be followed by this court. Defendant urges this court to instead follow *Gilinsky II*. While the relevant language in *Dilts* appears to be *dicta*, the same cannot be said of *Flick*. It is clear from *Flick* that the Seventh Circuit holds that the mere fact that forged instruments are transported together does not mean that each check cannot be the basis of separate § 2314 offenses. The holding in *Flick* should be understood as incorporating the *dicta* in *Dilts*. *Dilts*, 501 F.2d at 535, indicates that if all the instruments were negotiated at the same time and place, it would be reasonable to conclude that there was only one transportation. *Flick*, 516 F.2d at 496, refers to a single transportation "unrelated to [the defendant's] own wrongful conduct" as not being a single offense. This implies that a single transportation *related* to the defendant's conduct could constitute a single offense. Therefore, both *Flick* and *Dilts* indicate that the focus should be on what the defendant's conduct could be expected to cause in terms of interstate transportation of the improper instruments. *See also Cabbell*, 636 F.2d at 248.

The law in the Seventh Circuit is that negotiating a number of forged or stolen checks in a single transaction can only constitute one violation of § 2314, regardless of whether or not the checks were actually transported together across state lines. On the other hand, negotiating a number of forged or stolen checks on more than one day or at more than one location would constitute separate offenses, again, regardless of whether or not the checks were actually transported together across state lines. Another possible scenario is the negotiation of a number of stolen or forged checks during separate visits to a single bank, but all on the same day. If the focus is simply on the number of transactions, then there would be separate offenses. If the focus is on whether the checks could be expected to be transported together, then it may be reasonable to conclude that negotiating more than one check during multiple visits to the same bank on a single day will

result in all the checks being transported together. Such an inference would be reasonable if a bank generally sorts and distributes out-of-state checks on a daily basis after the bank is closed to the public.[7] In *White,* 524 F.2d at 1254, the Fifth Circuit found that it would be mere happenstance if checks cashed in separate visits on a single day were transported together. That case, however, involved cashing checks at a retail store, a business that might have less regular practices than a bank. As regards a bank, it would be reasonable to assume that checks cashed during separate visits on a single day would be transported together. Under such circumstances, only a single offense could be charged.

The question in this case then becomes: what are the proper facts to consider given the posture of the case? The government argues that the proffer of facts at the guilty plea hearing shows the four checks were passed at four different banks in Greensboro. At that hearing the government first described the facts regarding a separate indictment involving passing stolen checks in Fargo, North Dakota. It was expressly stated, as regards that indictment, that "defendant cashed these checks at various banks." The government also stated there would be evidence of defendants' fingerprints on the checks, bank photos, and "bank teller identification" of defendant. The government then stated:

> With regard to the North Carolina indictment, which is a five-count indictment, the government's evidence would show that on May 21, 1982, in Greensboro, North Carolina, the defendant cashed and forged four checks, again on the name of Nationwide Photo, in the amount of $285, payable to Jerome Callahan, and signed again in the name of Allan Stewart.
>
> A fifth such check was cashed in Greensboro on May 25, 1982.

In addition to the evidence that the defendant passed identical Allan checks on other occasions—excuse me—that he passed identical stolen checks on other occasions, the government would present the testimony of several bank tellers who would testify that the defendant cashed the checks described in the indictment. The government would also introduce bank surveillance photos and films to show that the defendant was the one who cashed those stolen checks.

The government argues that in light of the evidence that Makres went to various banks in North Dakota and the references, as regards the North Carolina indictment, to several tellers and more than one photo, it should be inferred that Makres passed the checks at four or five different Greensboro banks.[8] While that inference is a possible one, it is not the only one. "Several" is an imprecise term and some of the tellers may have been at the same bank or plaintiff may have visited only two or three different banks, not five different banks.

█ The facts presented at the time of the plea were insufficient to form a factual basis for a plea to five separate offenses. *See generally United States v. Fountain,* 777 F.2d 351, 355–56 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). The inquiry as to the factual basis should be sufficient to provide the defendant with an understanding of the charge so that he or she can know if his or her conduct satisfies the elements of the charges. *Id.* at 355 (quoting Fed.R.Crim.P. 11(f) advisory committee note (1966)). Makres's guilty plea hearing was insufficient to provide him with an understanding that separate transactions were necessary for him to be guilty on five separate counts. If a direct appeal had been taken challenging the conviction based on a violation of Rule 11, reversal of the conviction

---

7. Such an inference would also be reasonable if the cutoff is prior to closing to the public, but all of defendant's transactions were prior to the cutoff.

8. The indictment does not refer to the banks where the checks were cashed, but does allege

four were cashed in Greensboro on the same day. The fifth is alleged to have been cashed on May 25. Also, all the presentence reports in this case have been examined and none indicate where the checks were cashed nor if they were cashed at more than one bank.

would have been likely since any violation of Rule 11 makes reversal mandatory. *Id.* at 355. The fact that Makres presently concedes that there were transactions at four separate banks would be irrelevant; only the record as of the time of the guilty plea can be considered. *See id.* at 356; *Irizarry v. United States,* 508 F.2d 960, 967 (2d Cir.1975); *United States v. Navedo,* 516 F.2d 293, 297 (2d Cir.1975).

If this court were to construe Makres's present motion as one pursuant to 28 U.S.C. § 2255, it nevertheless appears no relief could be granted. Unlike a direct appeal based on a violation of Rule 11, a defendant must show prejudice when basing a § 2255 motion on a violation of Rule 11. *See United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *United States v. Frazier,* 705 F.2d 903, 907 n. 5 (7th Cir.1983). Even if the lack of a factual basis resulted in an involuntary plea, *see United States v. Johnson,* 612 F.2d 305, 309 (7th Cir.1980); *Carreon v. United States,* 578 F.2d 176, 179 (7th Cir.1978), Makres must still show prejudice. It would appear no prejudice occurred in this case because Makres was advised at the time of pleading that he could be sentenced to consecutive terms, he presently admits that there is a factual basis for charging separate offenses (i.e., he admits the checks were cashed at different banks), and he does not argue he would not have pleaded guilty if fully aware of the facts necessary to support the charges against him. Also, Makres would have to show cause for not previously raising the Rule 11 issue. *Nevarez–Diaz v. United States,* 870 F.2d 417, 422 (7th Cir.1989). Therefore, even if this court were inclined to construe the present motion as one under § 2255, there is no basis in the present record for overturning the conviction.[9]

Defendant's present motion is neither a direct appeal nor a § 2255 motion; it is a Rule 35(a) motion. Under Rule 35(a), the validity of the conviction is assumed. *Gilinsky v. United States,* 335 F.2d 914, 916 (9th Cir.1964) ("*Gilinsky I*"); *McClain v. United States,* 478 F.Supp. 732, 737 (S.D. N.Y.1979), *vacated on other grounds,* 643 F.2d 911 (2d Cir.), *cert. denied,* 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981); C.A. Wright, *Federal Practice & Procedure* § 582 at 380 (2d ed. 1982). Facts outside the record cannot be considered. *Semet v. United States,* 422 F.2d 1269, 1271 (10th Cir.1970); *Gilinsky I,* 335 F.2d at 916–17; Wright, § 582 at 385–86. That defendant may presently concede that he cashed checks at four different banks on May 21, 1982 is therefore irrelevant. The convictions on five counts, however, must be presumed to be valid and since the record does not show that any of the counts were based on cashing a check on the same day and at the same bank as charged in another count, imposing consecutive sentences cannot be found to be illegal on a Rule 35(a) motion. *Gilinsky I,* 335 F.2d at 917.[10]

IT IS THEREFORE ORDERED that defendant's motion to correct illegal sentence is denied.

---

9. Since the § 2255 issue was not expressly argued, the court should not be understood as resolving the issue. Perhaps defendant's concession has been misinterpreted, *see* note 1 *supra,* and perhaps defendant can show cause and prejudice. Determination of those issues is only necessary if a § 2255 motion is filed. The issue is discussed only to make clear the posture of this case.

10. In *Gilinsky I,* the court held no relief was available under Rule 35, but remanded the case for further consideration of a Rule 32(d) motion. 335 F.2d at 917. *Gilinsky II,* which was previously discussed, was an appeal of the denial of the Rule 32(d) motion. *See Gilinsky II,* 368 F.2d at 488 n. 1. In the present case, a motion pursuant to that Rule would be in the form of a § 2255 motion. *See* Fed.R.Crim.P. 32(d). As previously discussed, there is no basis in the present record for granting relief on a § 2255 motion.