### UNITED STATES v. ANTROBUS.

No. 10460.

United States Court of Appeals
Third Circuit.

Argued Oct. 1, 1951.

Decided Oct. 26, 1951.

Michael vonMoschzisker, Philadelphia, Pa., for appellant.

Charles W. Kalp, Asst. U. S. Atty., Lewisburg; Pa., for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Appellant was convicted under a six-count indictment charging him with transporting six motor vehicles in interstate commerce, knowing them to be stolen. 18 U.S.C.A. § 2312, Dyer Act.[1] The trial judge sentenced him to imprisonment for a period of two years on each count, the sentences to run consecutively.

Appellant's argument on appeal is a threefold one. First, he argues that the evidence was insufficient to convict him and that the trial court thus erred in not granting his motion for a judgment of acquittal. Second, appellant charges the trial judge with error in admitting certain evidence of an earlier trip by appellant and his son in a stolen vehicle. Third, appellant urges that four of the sentences are void on the theory that only two offenses were committed.

On July 15 and 16, 1947, appellant's son stole three automobiles from the streets of New York City. On July 23 these vehicles were transported to Harrisburg, Pa., where they were sold to a used car dealer. Appellant's son drove one of the cars; two drivers employed for the purpose drove the other two stolen cars. Appellant drove a fourth car in order to provide return transportation for his son and the two drivers. The three stolen cars sold in Harrisburg on July 23 are the basis for three counts of the indictment. The following month, substantially the same pattern of events transpired. Between August 8 and 16 again three cars were stolen by appellant's son, and on August 19 the vehicles were transported from New York to Harrisburg under circumstances identical to the July transportation. This second group of three vehicles represents the subject matter of three additional counts of the indictment.

■ Did appellant cause these six automobiles to be transported in interstate commerce, knowing them to be stolen? The theory of the government is that appellant and his son were co-partners in the unlawful enterprises outlined above; that the drivers were employed by both appellant and his son; and that each was equally responsible for the interstate transportation of the vehicles. The defense, on the other hand, portrays appellant as a mere innocent agent who had been hired by his son to chauffeur the cars. The jury accepted the theory of the government, and we think there is clearly sufficient evidence to support their finding.

The record reveals that on two occasions appellant's son, in introducing appellant to Harrisburg dealers, remarked that the two were in business together. While it is true that the son took the active role in hiring the drivers, there is evidence that appellant had supervisory control over them. Counsel stresses the fact that appellant took no part in the negotiations with the Harrisburg dealer. There is evidence, however, that appellant was just across the street from the car lot and that appellant's son consulted with his father three or four times with respect to price. After the sales were consummated, appellant removed the New York license tags from the cars, stating to the dealer's salesman: "I want to take them back to the owners. They allowed me to transport the automobiles over to Pennsylvania and use those tags and then I have to deliver them back." Immediately after each of the two groups of sales, appellant made substantial deposits in his bank account.

The only witness called by appellant was his son. He testified that he had employed his father as a chauffeur at $50 a day and that neither his father nor any of the drivers knew that the cars covered by this indictment were in fact stolen. The jury was told that the father believed his son was

1. "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 2312.

engaged only in a legitimate used car business. The son further testified that he owed his father a large sum of money and that the substantial deposits made by appellant in July and August represented payments on these obligations.[2] In order to rebut this defense, the government cross-examined the son regarding trips made to the South. The son admitted that his father and he travelled to Georgia in May 1947 in a stolen car, that appellant applied for a Georgia registration for the car, and that it was subsequently sold either in Georgia or Louisiana. The son admitted that he used assumed names and that appellant had knowledge of this. Moreover, the fact that the son had served a prior prison sentence growing out of an automobile theft was well known to appellant. The factual disputes were clearly for the jury. We think that the total effect of this evidence justifies the jury's conclusion that appellant possessed the requisite criminal intent. If the jury believed the government's witnesses, it certainly might have concluded that appellant was not merely an innocent chauffeur, but an active partner in these illegal operations.

▇▇▇ Appellant contends the evidence of the trip to Georgia was inadmissible on the ground that there was no evidence that appellant knew the automobile used on that trip was stolen. That evidence was, of course, admitted to negative appellant's defense that he was a mere dupe. It is for the trial judge to decide on the facts of each case whether the offered evidence forms the basis of a sound inference as to guilty knowledge of the accused in the transaction under inquiry. United States v. Brand, 2 Cir., 1935, 79 F.2d 605. It may very well be that if the government had offered overpowering evidence that appellant knew the car driven to Georgia was

stolen, then such evidence would have been even more persuasive. The evidence presented, while less persuasive, was not necessarily inadmissible. It should be noted that the Georgia trip was made just several months prior to the trips involved in this case; on the Georgia trip, as on the Harrisburg trips, father and son worked closely together. That evidence helped point the finger at a father-son partnership, and it necessarily renders the innocent dupe argument a dubious one. See II Wigmore on Evidence § 302 (3d. ed). We think that the admissibility of that evidence was clearly within the discretion of the trial judge. United States v. Brand, supra.

Appellant lays his principal stress on the contention that only two of the sentences are proper. His argument is that even if appellant did possess the requisite criminal state of mind, the transportations of July 23 constituted only one offense and the transportations of August 19 likewise constituted only one offense. Appellant asserts that the record reveals that on each of the two days, three vehicles were transported from New York to Harrisburg in one convoy, the three cars in each convoy thus having crossed the state lines at substantially the same time.[3] Hence, we are urged to hold that on each of the two dates there was but a single transportation in violation of the Dyer Act. Appellant relies on Robinson v. United States, 10 Cir., 1944, 143 F.2d 276. In that case one automobile was used to transport three women across state lines in violation of the Mann Act. That court held that there had been but a single transportation, and hence appellant had committed only one offense. The fact situation involved in the Robinson case has produced a sharp conflict in decisions among the various circuits. Several courts have reached the opposite conclusion.[4] But

---

2. The son testified that his financial obligations to his father arose in several ways. The son had stolen a large sum from his father which he now felt obligated to return. Moreover, his father and mother had been rearing the son's child, for which they were entitled to compensation.

3. The record is unclear as to whether the cars actually did proceed in a single con-

voy. We shall assume *arguendo* that appellant's version of the facts is accurate.

4. St. Clair v. Hiatt, D.C., 83 F.Supp. 585, affirmed per curiam, 5 Cir., 1948, 177 F.2d 374, certiorari denied 339 U.S. 967, 70 S.Ct. 983, 94 L.Ed. 1375, same case D.C. Va.1945, 62 F.Supp. 795; Crespo v. United States, 1 Cir., 1945, 151 F.2d 44;

even were this court to accept the rationale of the Robinson case, we do not think that it leads to the result contended for here.

Various tests have been applied to determine whether the offenses charged in several counts of an indictment are in fact identical. One such test calls for a determination of whether the same evidence necessary to prove Count One will also satisfy Count Two. If the same evidence will suffice, then there has been only one offense. See Ebeling v. Morgan, 1915, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151; Warner v. Pescor, 8 Cir., 1947, 163 F.2d 670. If that test be applied to the facts of this case, it is clear that an indictment charging six separate offenses was proper. Appellant urges, however, that this identity of evidence test is applicable only where the problem involved is whether the same act constitutes a different offense under two or more statutory provisions. Where only one statutory provision is involved, appellant's contention is that the court must determine whether there has been only one criminal act—one criminal impulse. Cf. Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. If this test be applied to the facts here, we think it will only reinforce the result reached by the use of the identity of evidence rule. Appellant was not in fact at the wheel of any of the six stolen cars. He was a co-captain of the enterprise, however, and his violations of the Dyer Act lay in the fact that he caused the six vehicles to be transported from New York to Harrisburg. Appellant hired the two drivers on each of the days. At every moment of the trip, he, together with his son, supervised them. At any moment on the trip he and his son could have ordered them to stop or to change their routes. Thus, as each vehicle crossed the state lines, its operation was being controlled and supervised by appellant and his son. Causing Driver A to drive stolen Car A across state lines constituted one impulse or act. Causing Driver B to take Car B across state lines was a second impulse. Causing his son to drive the third car was

a third act. We think it is clear that on each of the two days appellant committed three offenses under the Dyer Act. We conclude that the indictment and conviction under six counts and the subsequent sentences were proper.

For the above reasons, the judgment of the district court will be affirmed.

---

Gillenwaters v. Biddle, 8 Cir., 1927, 18 F.2d 206. Compare the facts in Oddo v. United States, 2 Cir., 1949, 171 F.2d 854 with the instant case.