**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Howard Lee WHITE, Defendant-Appellant.**

**No. 74–3281.**

United States Court of Appeals, Fifth Circuit.

Dec. 24, 1975.

Rehearing Denied Feb. 9, 1976.

---

Victor R. Arditti, El Paso, Tex. (Court appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Ronald Ederer, William B. Hardie, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and COLEMAN, Circuit Judges.

COLEMAN, Circuit Judge.

The appellant, Howard Lee White, is a man to be pitied. Born in 1929, he finished the third grade of regular school, the fifth grade in reform school, and went to about the tenth grade in other prison schools. At his trial on July 30, 1974, he testified that for various offenses, none of them violent crimes, he had spent twenty nine years in prison. He was then 45 years old.

In the instant case, White was convicted on four counts of interstate transportation of forged securities, worthless checks, 18 U.S.C., § 2314. He seeks reversal on the following grounds:

(a) his conviction was the product of double jeopardy;

(b) he was denied effective assistance of counsel;

(c) a juror was improperly seated;

(d) suppressed evidentiary items were introduced at trial; and

(e) Counts One and Two were duplicitous, hence defendant should have been sentenced on only one of them.

Upon briefs, the trial record, and oral argument, we affirm the judgment of the District Court.

### Double Jeopardy

The prosecutorial events occurred as follows:

April 26, 1974. Indicted in two counts.

May 13, 1974. Trial jury selected and sworn, but no testimony taken.

May 13, 1974 (The same day) White filed a motion that he be given a psychiatric examination.

May 15, 1974. Motion granted.

May 23, 1974. A superseding indictment is returned, six counts, violations of the same statute as in the first indictment. The first two counts of the new indictment are the same as those alleged in the first indictment.

July 30, 1974. A new jury selected and sworn. Counts five and six dismissed on a directed verdict. Defendant convicted of the first four counts.

 At least as to the first two counts, double jeopardy attached when the first jury was selected and sworn, *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). However, the conclusion that jeopardy has attached only begins, rather than ends, the inquiry as to whether a retrial is barred. *Serfass* at 390, 95 S.Ct. 1055; *Somerville* at 467, 93 S.Ct. 1066; *Smith v. Mississippi*, 5 Cir. 1973, 478 F.2d 88, 93.

■ The courts have often noted that virtually all double jeopardy cases turn on their particular facts and thus escape categorical classification. *See, e. g., Somerville* at 464, 93 S.Ct. 1066; *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *United States v. Kin Ping Cheung*, 5 Cir. 1973, 485 F.2d 689, 690.

■ The broad standards which do exist were first articulated in *United States v. Perez*, 22 U.S. 579 (9 Wheat.), 6 L.Ed. 165 (1824). It was there stated, as so often thereafter repeated, that a jury may be discharged when required by manifest necessity or to avoid defeating the ends of public justice.

■ Our review of this record leads to the inescapable conclusion that the only possibility of a defense, however faint, was that Mr. White lacked the requisite mental capacity at the time he passed the worthless checks. One of the ways of lending credence to such a contention, or at least of hoping to do so, would be by expert testimony to that effect. This could not be done without a psychiatric examination. White, not the government, made the motion for that examination, but not until the day the first jury was sworn.

This left the trial judge with two alternatives:

(a) deny the motion, proceed to trial, and thus deprive the defendant of any chance of an acquittal; or

(b) grant the motion and give the defendant a chance, however desperate.

We do not think that the appellant may predicate error upon the granting of his own motion, especially under the circumstances here existing.

Once the Judge granted the motion he faced further alternatives:

(a) He could sequester the jury for whatever time the psychiatric examination required;

(b) He could let the jury go forth for an indefinite time; or

(c) He could, when the examination was complete, allow a fresh jury to try

the issue, to the same effect as if a mistrial had formally been ordered when the motion was granted.

Alternative (a) would have been utterly unreasonable, unfair to the jurors, and no doubt highly prejudicial to the defendant. Alternative (b) would, for an indefinite time, have exposed the jurors to the possibility of extraneous and impermissible influences. Certainly it would not have afforded the defendant the certainty of fairness and impartiality reasonably to have been expected of a freshly chosen jury.

We are constrained to hold that, faced with the situation which the defendant presented, the trial judge not only acted wisely, he acted with commendable fairness and with an eye to the best interests of the defendant.

■ This case is analogous to one in which the defendant moves for a mistrial or in which he engages in conduct calculated to necessitate a mistrial, knowing that such actions will result in the empanelling of another jury. In such a situation, where the mistrial is not attributable to prosecutorial or judicial overreaching, the defendant is barred from relying on a double jeopardy defense. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Dinitz*, 5 Cir. 1974, 492 F.2d 53, 57, *aff'd en banc*, 504 F.2d 854, *cert. granted*, 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761 (1975); *United States v. Beasley*, 5 Cir. 1973, 479 F.2d 1124, *cert. denied*, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158; *United States v. Iacovetti*, 5 Cir. 1972, 466 F.2d 1147, *cert. denied*, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270; *United States v. Romano*, 5 Cir. 1973, 482 F.2d 1183, *cert. denied sub nom., Yassen v. United States*, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753; *McNeal v. Hollowell*, 5 Cir. 1973, 481 F.2d 1145, *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567.

■ True, there was a superseding indictment and it may be that the prosecution would have shown better judgment

had it not sought that indictment. Yet, as the precedents have so often held, a superseding indictment may be returned at any time before a trial on the merits. Thus the appellant must be charged with assuming this risk when he chose to make the motion for the psychiatric examination. Indeed, on a choice between no defense and the risk of a superseding indictment, any reasonable person would have chosen the latter alternative.

Accordingly, we hold that the course followed by the District Court was manifestly necessary and also promoted the ends of public justice. The double jeopardy claim is without merit.

### Effectiveness of Counsel

■ Effective counsel means "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance". *MacKenna v. Ellis*, 5 Cir. 1960, 280 F.2d 592, 599, *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. Appellant's "examples" of ineffectiveness, viewed either individually or cumulatively, do not persuade us that his appointed counsel fell below the standard.

■ White complains that his attorney should have objected to the seating of at least six of the jurors. Five had previously sat on a forgery case, but the voir dire disclosed no prejudice on their part. Indeed, appellant does not even contend that the defendant in the prior trial was convicted. Juror George Winston was a guard at a penal institution where White had once been briefly held, but there was no indication that he recognized White, and the Judge questioned him at length as to any possible effect his position might have on his opinion. Prejudice of a juror will not be presumed, but must be demonstrated. *See McMillon v. Estelle*, 5 Cir., 1975, 523 F.2d 1249; *United States v. Cashio*, 5 Cir. 1969, 420 F.2d 1132, *cert. denied*, 397 U.S. 1007, 90 S.Ct. 1234, 25 L.Ed.2d 420 (1970).

Appellant's complaints relative to counsel's failure to object to the introduction of suppressed evidence or statements about it are similarly baseless. One witness testified that he had sold White a typewriter for which he received a forged check. No mention was ever made of the typewriter's recovery in the defendant's room during a warrantless search. Also contrary to White's suggestion, the printed checks introduced at trial were found on his person at the time of arrest, not during the aforementioned search.

Appellant also contends that counsel ineffectively presented the insanity defense by calling the court-appointed psychiatrist although he knew that witness would testify that White was sane, and by calling White to testify to his previous convictions and incarceration. The thrust of the defense was that White had spent so much of his life in prison that, at the time of the offenses, he was unable to cope with society and did not comprehend his actions. This is one of the few things, regrettably, that might be raised in the defendant's behalf. Defense counsel used the only means available to him. The best of lawyers have to take the facts as they are and can only do their best to present those facts in any available favorable light.

### Duplicitous Counts

The final appellate contention is that Counts 1 and 2 of the indictment, while dealing with separate checks, actually covered only one transaction. Therefore, assessing a sentence on each count was improper. The basis for this argument is that the checks were passed on the same date in the same store and were allegedly simultaneously transported in interstate commerce because they were taken to the bank at the same time. Neither the facts nor the cases sustain this position.

■ The law is well settled that the interstate commerce requirement of § 2314 is satisfied when a person knowingly cashes a forged or fictitious check

in one state which is drawn on, and presented for payment to, a bank in another state. *Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Sheridan*, 329 U.S. 379, 391, 67 S.Ct. 332, 91 L.Ed. 359 (1946); *United States v. Hill*, 5 Cir. 1972, 468 F.2d 899; *United States v. Webb*, 5 Cir. 1971, 443 F.2d 308, 310; *Hubsch v. United States*, 5 Cir. 1968, 256 F.2d 820, 822; *Rickey v. United States*, 5 Cir. 1957, 242 F.2d 583, 585.

Each time an individual so causes a fraudulent check to be transported, he has committed a separate offense cognizable under the statute. Here the drafts were passed to different clerks for different items several hours apart. White's actions clearly constituted two separate and distinct transactions. The happenstance that the checks may have traveled together from Texas to New Mexico will not convert these multiple offenses into a single violation. There is an obvious distinction between an indictment which rests on an accused himself transporting all the checks at one time as in *Cooks v. United States*, 5 Cir. 1972, 461 F.2d 530, and one alleging separate negotiations, each of which caused the security to be transported in interstate commerce. In the latter case, the defendant releases dominion over the items at the time of negotiation, and the number of prosecutable offenses will not be made dependent on the happenstance of bank or postal transmission procedures. *Popeko v. United States*, 5 Cir. 1975, 513 F.2d 771, 773; *United States v. Dilts*, 7 Cir. 1974, 501 F.2d 531, 535; *King v. United States*, 10 Cir. 1967, 372 F.2d 946; *Amer v. United States*, 8 Cir. 1966, 367 F.2d 803, 805; *Ketchum v. United States*, D.Md.1971, 327 F.Supp. 768, 773–76. *See United States v. Driscoll*, 5 Cir. 1972, 454 F.2d 792, 801.[1] *Contra Gilinsky v. United States*, 9 Cir. 1966, 368 F.2d 487, 489.

### The Sentence

White was sentenced to serve ten years on Count 1. Thereafter, he must serve ten years on Count 2. The worthless check in Count 1 was for $110.63. The Count 2 check was for $110.19. During the trial, counsel for the defendant stated to the Court that the "whole basis of my case is . . . the jury's going to know that he [White] has been in an institution all of his life" [Trial transcript p. 76]. At another point [Trial transcript p. 123] counsel stated that the defense "is insanity". In his opening statement, counsel for the defendant asserted "that the government cannot prove beyond a reasonable doubt that Mr. White was capable of forming the necessary intent to commit these crimes" [Trial transcript p. 126]. When the defendant came on for sentence he was allowed to participate in a rather extensive discussion with the Court. He stated that he had been given adequate representation and added "Of course, I was guilty, you know, of the offenses" but stated that his plea of not guilty was "by reason of this institutional thing. And also that I was completely drunk everytime I wrote these things".

It would appear that the trial court was given a strong impression that society was entitled to be free of White's activities for twenty years. The length of the sentence, within statutory limits, is not a matter for the consideration of this Court. Appellant has the opportunity under Rule 35 of the Rules of Criminal Procedure to move for reduction of sentence within 120 days after the receipt of our mandate. The attention of counsel is specifically directed to this fact.

There being no legal reason for the reversal of White's conviction, the judgment of the District Court is

Affirmed.

---

1. As noted in *Dilts*, we cited the Ninth Circuit's contrary case of *Gilinsky* in our *Driscoll* decision, but we then held that the number of instances of passing checks governs the number of violations.