**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter KITOWSKI, Defendant-Appellant.**

**No. 83–8479.**

United States Court of Appeals, Eleventh Circuit.

April 16, 1984.

---

Steven H. Sadow, Donald F. Samuel, Atlanta, Ga., for defendant-appellant.

Richard H. Dean, Atlanta, Ga., for plaintiff-appellee.

Before HILL, VANCE and ANDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case, we are asked to resolve an issue that a panel of this court previously reserved: what is the appropriate unit of prosecution under 18 U.S.C. § 2312, which prohibits interstate auto theft? *See Ward v. United States,* 694 F.2d 654, 660 n. 9 (11th Cir.1983). A similar issue is presented under 18 U.S.C. § 2315, which prohibits

concealing and disposing of stolen securities. Following the path of other circuit court decisions passing on these issues, we hold that 18 U.S.C. § 2312 allows for the imposition of multiple sentences where an accused is proven to have transported more than one stolen auto across state lines at distinct times. We also hold that 18 U.S.C. § 2315 provides for multiple sentences where an accused is proven to have disposed of stolen securities in different places at distinct times. The district court correctly resolved these issues. However, because appellant committed only one offense by transporting a group of forged securities across state lines in a single trip, he was improperly sentenced for multiple violations of 18 U.S.C. § 2314 and we must remand to the district court for resentencing under that statute.

We review the facts at some length in order to explain the rather difficult legal issues presented. Appellant Kitowski planned to take three cars that had been stolen in Chicago to Georgia in order to acquire new titles. To this end, he enlisted the aid of two other drivers and, with Kitowski driving one of the cars, the three drove south in a convoy. Kitowski also carried a briefcase containing counterfeit Michigan titles, papers that were essential to his plan to secure new titles in Georgia.

Kitowski and his cohorts drove the stolen cars into Atlanta and discussed plans for getting Georgia titles. Kitowski then gave to each of the other drivers a counterfeit Michigan title and instructed each to go to a specified county and acquire a Georgia title and license plate. One driver was sent to Rockdale County, where she obtained Georgia tags. The next day, another went to Newton County and registered the second of the three stolen autos. Finally, Kitowski drove to Henry County and registered the third stolen auto.

After completing their business, Kitowski and his fellow conspirators left Georgia headed north. However, the car driven by Kitowski, a red Corvette, overheated in Newton, Iowa, and he was forced to stay overnight while repairs were made. Local police, for reasons we will set forth more fully below, suspected that the Corvette was stolen and arrested Kitowski. After he was returned to Georgia, Kitowski was charged with three counts of interstate transportation of stolen motor vehicles, in violation of 18 U.S.C. § 2312, with three counts of interstate transportation of counterfeit auto titles, in violation of 18 U.S.C. § 2314, with three counts of concealing, storing and disposing of stolen motor vehicles, in violation of 18 U.S.C. § 2313, and with three counts of concealing, storing and disposing of counterfeit titles, in violation of 18 U.S.C. § 2315. The jury found him guilty on all twelve counts, and the district court gave him a forty-five year sentence.

Kitowski appeals and raises two questions: (1) Did the Newton, Iowa, police lawfully arrest him; and (2) Did the district court properly sentence him. We answer the first question in the affirmative, but we agree with both parties that Kitowski was improperly sentenced on the section 2314 counts.

## I. THE ARREST

Kitowski initially challenges the lawfulness of his arrest and the subsequent seizure of evidence from the red Corvette by local police officers in Newton, Iowa. He argues that the evidence supporting his arrest and conviction was obtained in violation of the fourth amendment. Alternatively, Kitowski contends that the information known to the officers at the time of the arrest was insufficient to establish probable cause.

When the car Kitowski was driving overheated, he drove into Barney's Service Station and asked a mechanic to make any necessary repairs. The mechanic told Kitowski that the car could not be repaired before morning and suggested to Kitowski that he might get a room for the night. Kitowski agreed, left the car and its keys with the mechanic, and then checked into a local motel.

Early the next morning, the mechanic determined that the car needed a new radi-

ator but decided to consult Kitowski before installing one. The mechanic, however, could not remember Kitowski's name, so he called the local police department and asked those in charge to run a computer check on the car's license plates to determine the name of the owner. The computer check failed to provide the requested information, but the officers asked the mechanic for the car's vehicle identification number (VIN) so they might run a second check through the computer. The mechanic looked for but could not locate the VIN for the Corvette.

Sometime later in the morning, two patrol officers stopped by the service station where Kitowski had left the car for repairs. They helped the station owner search for the car's VIN and finally found it on the outside of the door post on the driver's side of the car.[1] The officers became suspicious after locating the VIN for several reasons. First, the plate carrying the VIN was an obvious replacement because the area around the plate was discolored, indicating that a larger plate had been replaced with the present one. Second, the plate contained new rivets and the plate's numbers were misaligned. At this point, the officers called in a department auto theft investigator, who later confirmed their suspicions that the plate had been altered. A registration check of the VIN indicated that the number was issued to a car with an engine larger than the one in the Corvette; that it was issued to a green car, not a red one like the Corvette; and that the license plate on the Corvette was issued to Robert Katrone, not Kitowski.

On the basis of this information, the officers located and arrested Kitowski.[2] After receiving *Miranda* warnings, Kitowski made certain incriminating statements and consented to a search of the Corvette. The officers who searched the car found counterfeit auto titles in Kitowski's briefcase

together with tools that might be used to alter a car's VIN plate. Kitowski moved to suppress this evidence, but the district court ruled that the officers' initial search for the Corvette's VIN did not violate Kitowski's fourth amendment expectations of privacy and, therefore, denied the suppression motion.

■ In assessing Kitowski's challenge to the police officers' search for the Corvette's VIN, we repeat the rule long ago adopted by this court:

> [I]nspections of motor vehicles performed by police officers, who were entitled to be on the property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof [are] not searches within the meaning of the Fourth Amendment; ... alternatively, if ... such inspections constituted a Fourth Amendment search, then no search warrant was necessary because such inspections [are] reasonable and [do] not violate the right of the people to be secure in their persons, houses, papers or effects.

*United States v. Johnson,* 431 F.2d 441 (5th Cir.1970) (en banc), *see also United States v. Williams,* 434 F.2d 681, 683–84 (5th Cir.1970), *cert. denied,* 401 U.S. 1011, 91 S.Ct. 1262, 28 L.Ed.2d 547 (1971).

■ The Newton, Iowa, police officers were entitled to be on the property where they viewed the stolen Corvette's VIN since the manager of the service station asked for their assistance. The fact that the officers were required to open the car's door in order to locate the VIN does not make the viewing an unreasonable search under the fourth amendment. *See United States v. Duckett,* 583 F.2d 1309, 1312–13 (5th Cir.1978) (officer may open door of vehicle to view VIN without running afoul of fourth amendment proscriptions against

---

**1.** It is undisputed that the two officers did not enter the car at any time to search for the VIN.

**2.** The government argues that Kitowski was not arrested because he voluntarily accompanied the officers to the police station after he was

given *Miranda* warnings. Since we conclude that the officers had probable cause to arrest Kitowski, we have no need to question the district court's conclusion that Kitowski was arrested.

unreasonable searches); *United States v. Forrest,* 620 F.2d 446, 455 (5th Cir.1980) (to same effect).

In the course of viewing the Corvette's VIN plate, the officers became suspicious when they noticed signs of alteration. The plate appeared to be a replacement for the original VIN plate and the new plate's numbers were misaligned. An auto theft expert examined the VIN plate and confirmed that the Corvette might have been stolen. The expert's opinion was reinforced by the results of a registration check of the car's VIN which showed that the VIN was issued to a car of a different engine size, color and owner.[3] At this point, the officers had done no more than view the car's VIN, as they were permitted to do, and check the VIN through their computer files. Nothing in the fourth amendment prohibits such an inspection or the investigatory registration check which followed. Therefore, we reject Kitowski's argument that any evidence seized as a result of the officers' viewing the car's VIN should have been suppressed.

■ We also reject Kitowski's argument that probable cause did not support his arrest. To determine whether probable cause supported a warrantless arrest, we employ the following test:

> [P]robable cause exists if facts and circumstances within the knowledge of an arresting officer and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an individual has committed a crime.

*United States v. Long,* 674 F.2d 848, 853 (11th Cir.1982) (citations omitted). We conclude that these officers, reasonably believing the car's VIN plate to be a replacement

and knowing that the Corvette varied in several important respects with the car to which the VIN had been issued, had probable cause to believe that Kitowski was driving a stolen car.[4] Therefore, the officers could lawfully arrest Kitowski and, once he had consented to a search of the Corvette, seize any evidence of the accomplished crime.

## II. THE SENTENCES

Kitowski next argues that the district court improperly imposed multiple sentences for each of his convictions. Specifically, Kitowski contends that he could not be given three separate sentences for his convictions under 18 U.S.C. § 2312, because the offenses charged, transporting three stolen cars across state lines, constitute but one transaction and hence but one offense. Kitowski makes similar arguments with respect to his sentences under 18 U.S.C. §§ 2314 and 2315.

■ To determine whether the district court properly imposed multiple sentences, we must decide "[w]hat Congress has made the allowable unit of prosecution," *United States v. Universal C.I.T. Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952), under each of the statutes in question. For, "the punishment appropriate for the diverse federal offenses is a matter for the discretion of Congress, subject only to constitutional limitations, more particularly the Eighth Amendment." *Bell v. United States,* 349 U.S. 81, 82, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). However, as one court put the matter, "where to draw the line, in the absence of clear statutory delineation, presents a problem to one's judgment and sense of fairness." *Scott v. United States,*

---

**3.** Kitowski argues that each of these inconsistencies between the car to which the VIN was issued and the Corvette can be explained by the fact that the car had been "customized." However, customization presumably does not require replacement of the car's VIN plate and it is that irregularity which initially aroused the officers' suspicions. Moreover, the latter discrepancies between engine size, car color and owner were consistent with the officers' belief that the car might have been stolen.

**4.** Kitowski's arrest in Iowa led to his conviction for transporting a second stolen auto. On appeal, the Seventh Circuit agreed with our conclusion that the facts known to the arresting officers were sufficient to establish probable cause to arrest Kitowski. *United States v. Kitowski,* 727 F.2d 1112 (7th Cir.1984).

255 F.2d 18, 20 (4th Cir.), *cert. denied,* 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555 (1958).

### A. The Allowable Unit of Prosecution Under 18 U.S.C. § 2312.

■ Title 18 U.S.C. § 2312 prohibits the interstate transportation of stolen vehicles in the following terms:

> Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years or both.

On its face, the statute does not clearly delineate the appropriate unit of prosecution for violations of this section. Four circuit courts have considered the issue and all have concluded that the transportation of each vehicle is the allowable unit of prosecution under section 2312. *United States v. Van Cleave,* 599 F.2d 954, 956 (10th Cir.1979); *United States v. Bennett,* 383 F.2d 398, 399–400 (6th Cir.1967), *cert. denied,* 390 U.S. 972, 88 S.Ct. 1077, 19 L.Ed.2d 1184 (1968); *Scott v. United States,* 255 F.2d 18, 20–21 (4th Cir.), *cert. denied,* 357 U.S. 942, 78 S.Ct. 1392, 2 L.Ed.2d 1555 (1958); *United States v. Antrobus,* 191 F.2d 969, 972 (3d Cir.1951), *cert. denied,* 343 U.S. 902, 72 S.Ct. 637, 96 L.Ed. 1321 (1952). Under these cases, one who personally transports a stolen car across state lines and aids in the transportation of a second vehicle can be convicted and sentenced for two separate violations, *Scott v. United States,* 255 F.2d at 20–21, even though the cars proceed in a single convoy, *United States v. Antrobus,* 191 F.2d at 971.

Each of these decisions holds that the appropriate unit of prosecution under section 2312 is the transportation of each vehicle because the offense of transporting each stolen vehicle across state lines can be avoided at any moment before the act is completed. Even after one car has crossed the state boundary, the second car can turn back and avoid violating the strictures of section 2312. As the Third Circuit explained:

> Appellant was not in fact at the wheel of any of the six stolen cars. He was a co-captain of the enterprise, however, and his violations of the Dyer Act lay in the fact that he caused the six vehicles to be transported from New York to Harrisburg. Appellant hired the two drivers on each of the days. At every moment of the trip, he together with his son, supervised them. At any moment on the trip he and his son could have ordered them to stop or to change their routes. Thus, as each vehicle crossed the state lines, its operation was being controlled and supervised by appellant and his son. Causing Driver A to drive stolen Car A across state lines constituted one impulse or act. Causing Driver B to Take Car B across state lines was a second impulse. Causing his son to drive the third car was a third act.

*United States v. Antrobus,* 191 F.2d at 972; *see also Scott v. United States,* 255 F.2d at 20–21 ("the appellant transported personally one vehicle, and was instrumental in transporting another. The acts of transportation were separate and distinct.").

We find this rationale persuasive and therefore hold that the appropriate unit of prosecution under § 2312 is the transportation of each stolen vehicle. Here, Kitowski drove one of the stolen cars and supervised the two other drivers. He could properly be charged with and sentenced for committing three violations of 18 U.S.C. § 2312.

Notwithstanding the unanimity of the case law from the other circuits on the issue, Kitowski argues that *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), compels us to hold that the three offenses must merge into a single violation. *Bell* involved a prosecution arising under the Mann Act, 18 U.S.C. § 2421, which prohibits, among other things, the interstate transportation of "any woman or girl for the purpose of prostitution ·...." The defendant in *Bell* had transported two women in a single trip in the same vehicle

and had received consecutive sentences after being convicted of two separate offenses. 349 U.S. at 82, 75 S.Ct. at 621. Finding the statute ambiguous when applied to the facts before it and resolving the ambiguity in favor of the accused in the absence of express legislative guidance, the Court held that only one offense had been committed. *Id.* at 84, 75 S.Ct. at 622.

Kitowski reasons that *Bell* extends to the situation presented here. Clearly, however, *Bell* is not so broad. The Court, perhaps responding to concerns expressed by the dissenters, characterized its holding as limited:

> It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning *a single transaction* into multiple offenses, when we have no more to go on than the present case furnishes.

349 U.S. at 84, 75 S.Ct. at 622 (emphasis added).

■ We have already indicated that Kitowski, by driving one stolen vehicle and supervising the transportation of two others, committed not a "single transaction" but three separate transactions.[5] For this reason, we join the other circuits that have considered and rejected the argument pressed by Kitowski that *Bell* requires us

to reverse two of his convictions and sentences under section 2312.[6]

### B. The Allowable Unit of Prosecution Under 18 U.S.C. § 2314.

■ A similar problem is presented by Kitowski's argument that the district court erred in sentencing him for multiple violations of 18 U.S.C. § 2314, which prohibits, among other things, interstate transportation of counterfeit securities.[7] Kitowski transported several counterfeit auto titles into Georgia, but he carried all of the securities, which were in his briefcase, in a single trip. The law of this circuit is well settled that, under these circumstances, Kitowski could only be convicted and sentenced for one violation of section 2314. *Cooks v. United States*, 461 F.2d 530, 531 (5th Cir.1972). The Government in fact concedes that *Cooks* requires us to vacate Kitowski's sentences on the section 2314 convictions.

We emphasize the distinction between carrying several counterfeit securities across state lines in a single trip and transporting, or causing to be transported, three stolen vehicles across state lines at distinct times. In the former situation, the perpetrator completes but one transportation and no amount of reluctance can change the consequences of the act of transportation once state lines have been crossed. In the latter situation, the perpetrator com-

---

5. Kitowski poses this hypothetical: if he had used a car carrier to bring all three vehicles into Georgia, he would have transported them in a single trip and in the same vehicle; *Bell* would then require that only one sentence be imposed; and, because there exists no meaningful difference between such a scenario and the situation presented here, *Bell* controls.

Of course, Kitowski did not use a car carrier. He used three drivers to drive three stolen cars into Georgia. Thus, while we agree with Kitowski that the situation he imagines is more analogous to the facts in *Bell*, we express no opinion as to the result we would reach if such a case were presented. We merely hold that under the facts of this case, the district court could properly impose three sentences for each of the three acts of transporting a stolen vehicle committed by Kitowski.

6. The Third Circuit decided *United States v. Antrobus* before the Supreme Court handed down

*Bell.* However, the Third Circuit noted that a different result might well attach where a defendant had violated the Mann Act by transporting more than one woman across state lines in a single car, thus anticipating *Bell.* 191 F.2d at 971–72. The *Antrobus* court, as we do here, concluded that the situation later presented in *Bell* would not require a contrary result under section 2312.

7. In pertinent part, 18 U.S.C. § 2314 reads as follows:

> Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited ...
>
>    *    *    *    *    *    *
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

pletes a separate act of transportation each time one of the cars crosses state lines and he can abort each act of transportation without regard to the journeys of the other vehicles.

Here, Kitowski completed only one transportation of counterfeit securities. Congress, having enacted section 2314 in order to punish those "who utilize the channels of interstate commerce to make an unlawful getaway," *United States v. Sheridan*, 329 U.S. 379, 384, 67 S.Ct. 332, 335, 91 L.Ed. 359 (1946), cannot be said to have prescribed multiple offenses for one act of transporting forged securities from one state to another. *Castle v. United States*, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961), *rev'g*, 287 F.2d 657 (5th Cir.); *Cooks v. United States*, 461 F.2d 530, 531 (5th Cir.1972); *Cabbell v. United States*, 636 F.2d 246, 247–48 (8th Cir.1980).[8] Therefore, under the circumstances of this case, the district court erred in imposing multiple sentences for the section 2314 violation.

### C. The Allowable Unit of Prosecution Under 18 U.S.C. § 2315.

■ Kitowski also challenges his multiple sentences for violations of 18 U.S.C. § 2315, which prohibits, among other things, receiving and disposing of stolen securities.[9] Relying on *United States v. Reed*, 647 F.2d 678 (6th Cir.), *cert. denied*, 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981), Kitowski argues that he committed only one violation of section 2315 by bringing counterfeit auto titles into Georgia and exchanging them for valid registrations. Therefore, according to Kitowski, the district court erred in imposing separate sentences.

In *United States v. Reed*, several defendants were charged under section 2315 with receiving and concealing stolen property. They challenged their subsequent convictions and sentences on the ground that the stolen goods forming the basis for the various charges against them were received at the same time and concealed at the same place; therefore, they could only be sentenced for one violation of section 2315. The Government, arguing that because the stolen goods were obtained from separate burglaries, urged the court to "presume that the property was received at different times, thereby constituting separate violations of the statute." 647 F.2d at 681. The Sixth Circuit, however, rejected the Government's contention and held that the charged offenses merged into a single count. *Id.* at 685.

We do not believe that *Reed*, even if it were binding on us, controls the issue presented by this case. *Reed* involved prosecutions under section 2315 for "receiving and concealing" stolen goods. The Government, in *Reed*, could not show that those goods were received or concealed at distinct times or at different places. In this case, conversely, Kitowski was indicted

8. We note that our courts have distinguished cases such as this one, where a defendant is proven to have personally transported several counterfeit securities across state lines in a single group, from cases where a defendant is shown to have caused the interstate transportation of forged securities by separate negotiations. In the last case, a defendant may properly be prosecuted for multiple offenses based on each negotiation because the negotiation of each forged security becomes the allowable unit at prosecution under section 2314. *E.g., United States v. White*, 524 F.2d 1249, 1254 (5th Cir. 1975), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976).

The distinction drawn in *White* reinforces our conclusion in part II. A above. For, just as separate negotiations of counterfeit securities may be made the basis for separate prosecu-

tions under 18 U.S.C. § 2314, so too may separate transportations of stolen autos be made the subject of separate prosecutions under 18 U.S.C. § 2312.

9. The relevant part of section 2315 provides:
    Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken ...

    \* \* \* \* \* \*

    Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**1426**

for and convicted of "concealing, storing and disposing of" counterfeit securities. The Government, here, did prove that the securities forming the basis of the indictment were disposed of in three different counties. Therefore, Kitowski committed three violations of section 2315.

This circuit has considered the distinction drawn above in an analogous context and found it controlling. Thus, in *United States v. Bullock,* 615 F.2d 1082 (5th Cir.), *cert. denied,* 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980), we held that

> ... 18 U.S.C.A. § 1202(a)(1), defining as a criminal offense the receipt, possession, or transportation in commerce by a convicted felon of "any firearms," allows the government to treat each of several firearms *not simultaneously received or possessed* as separate units of prosecution. The appellant can be punished separately for separate receptions and separate possessions.

*Id.* at 1086 (emphasis added). So, too, can Kitowski be punished separately for separately disposing of three counterfeit auto titles.

### III. CONCLUSION

We affirm the district court's finding that Kitowski's arrest was based on probable cause and, therefore, its denial of his motion to suppress. We also uphold the sentences imposed on the convictions under 18 U.S.C. §§ 2312 and 2315. However, we vacate Kitowski's sentences under 18 U.S.C. § 2314 and remand for the limited purpose of resentencing under that statute.

AFFIRMED in part; VACATED in part; and REMANDED with instructions.