NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3031 & 16-3083
_____

UNITED STATES OF AMERICA

v.

Andrew Clarke; Llewellyn Clarke,
Appellants
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Nos. 1:13-cr-00021-001 & 1:13-cr-00021-002)
Honorable Robert B. Kugler, United States District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 17, 2022

BEFORE:  GREENAWAY, JR., MATEY, and ROTH, *Circuit Judges*

(Filed: December 15, 2022)
_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

Appellants Andrew and Llewellyn Clarke[1] appeal from the judgments of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] For clarity, we refer to Andrew and Llewellyn Clarke jointly as "Appellants."  We reference them individually as A. Clarke and L. Clarke, respectively.

conviction entered by the United States District Court for the District of New Jersey. We will affirm.

## I. Background

From September 2010 through October 2011, Andrew and Llewellyn Clarke ("Appellants") operated a scheme to transport and mask the stolen status of more than 30 luxury vehicles, which had a total value of at least $1.9 million. After purchasing the stolen cars at low prices, Appellants engaged co-conspirators to "retag" the cars, meaning replace the manufacturer-issued Vehicle Identification Numbers ("VIN") on those cars with fake VINs. Then, the co-conspirators "flipped" the cars, or used fraudulent New Jersey titles that corresponded with the fake VINs to register and title the cars in Georgia. Finally, Appellants transported the cars to other states and countries for resale.

A law enforcement investigation captured video footage from August 2011 depicting Appellants loading three of these cars into a Hong Kong-bound shipping container, as well as recorded telephone conversations relating to the shipment. A subsequent search by law enforcement confirmed that the cars had fraudulent VIN numbers.

In connection with that investigation, a sealed criminal Complaint was filed against Appellants in May 2012. A. Clarke was arrested in June 2012. A four-count Indictment was returned in January 2013. Although A. Clarke consented to four continuances, he filed several motions to dismiss on Speedy Trial Act and Sixth Amendment grounds beginning in April 2013. The District Court dismissed these motions. L. Clarke was not arrested until May 2013.

2

In November 2013, the grand jury returned a Superseding Indictment, changing the dates of the conspiracy. Appellants were charged with one count of conspiracy to transport stolen vehicles, contrary to 18 U.S.C. § 2313, in violation of 18 U.S.C. § 371 and three counts of transportation of stolen vehicles, in violation of 18 U.S.C. § 2312.

The pre-trial proceedings were marked by what the District Court characterized as "[g]ames, games, and more games" as "part of a strategy to delay this case." S.J.A. 155, 192. For one, Appellants involved an "unusual [] number of lawyers." S.J.A. 108. At several points, Appellants moved to proceed pro se and indicated an intent to seek new counsel. A. Clarke sought to proceed with standby counsel and L. Clarke sought replacement counsel. This influx of motions necessitated conferences, which pushed off the trial schedule. Likewise, the District Court had to reschedule the trial multiple times to give replacement counsel adequate time to prepare and based on the unavailability of Appellants' counsel. These delays prompted L. Clarke to join A. Clarke in moving to dismiss for Speedy Trial Act violations, which the District Court denied.

Ultimately, the case proceeded to trial on June 22, 2015, after which the jury returned a guilty verdict on all counts for both Appellants. At that point, Appellants resumed their pre-trial attempts to undermine the proceedings. For instance, they filed motions attacking the Superseding Indictment, which the District Court denied. On June 23, 2016, the District Court imposed Guidelines-range sentences of 195 months' imprisonment on L. Clarke, and 300 months' imprisonment as well as three years of supervised release on A. Clarke.

## II. Discussion[2]

On appeal, Appellants argue that the District Court made several errors. A. Clarke argues that the District Court erred: (1) by not finding that the Superseding Indictment was improperly returned; and (2) in denying his motion to dismiss on Speedy Trial Act ("STA") grounds. Both A. Clarke and L. Clarke argue that: (3) the District Court erred in denying their motions to dismiss on Sixth Amendment speedy trial grounds; (4) their Superseding Indictment is multiplicitous in violation of Double Jeopardy; and (5) the District Court erred in calculating loss. We reject these claims and agree with the District Court's rulings against Appellants.

### a. Alleged Expiration of the Grand Jury

A. Clarke claims that the term of the grand jury that returned his initial Indictment had expired before it returned the Superseding Indictment. Relying on non-binding caselaw, A. Clarke argues that the grand jury's expiration means that "the Superseding Indictment is plainly a nullity resulting in a jurisdictional defect." A. Clarke's Br. 39-40.

However, A. Clarke waived this claim by failing to raise it before the District Court. *See* Fed. R. Crim. P. 12(b)(3); *United States v. Bansal*, 663 F.3d 634, 659 (3d Cir. 2011) (holding that failure to challenge grand jury proceedings in the District Court constitutes waiver). We may review this claim only upon a showing of good cause. Fed.

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the challenges to the convictions pursuant to 28 U.S.C. § 1291, and over the challenges to the sentences pursuant to 18 U.S.C. § 3742(a).

4

R. Crim. P. 12(c)(3). Although A. Clarke asserts that the issue was not discovered until after the sentencing, Federal Rule of Criminal Procedure 6(g) put him on notice that a grand jury's service expires after 18 months, and he was able to determine whether the period between the return of his initial Indictment and Superseding Indictment exceeded 18 months prior to his trial.[3]  Because A. Clarke fails to demonstrate good cause, we decline to reach the merits of this claim.

### b. Speedy Trial Act Claims[4]

A. Clarke asserts pre- and post-indictment Speedy Trial Act violations. Specifically, he argues that the continuances entered between June 2012 and April 2013 were invalid because they excluded time retroactively and were entered after his STA deadline had allegedly passed.  These claims are meritless.

The STA requires the government to file an indictment or information against a defendant "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  The STA also requires trial to "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has

---

[3] In arguing that the Grand Jury's 18-month term had expired, A. Clarke relies on orders that purportedly impaneled and discharged the jury.  However, it is unclear where A. Clarke located those orders, as the District Court denied his motion for them, and the Clerk's Office for the United States District Court for the District of New Jersey could not locate them.

[4] We review the District Court's factual findings for clear error, and exercise plenary review over its interpretation of the Speedy Trial Act.  *United States v. Claxton*, 766 F.3d 280, 292 (3d Cir. 2014).

5

appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." § 3161(c)(1). Violations of the STA may warrant dismissal with or without prejudice. § 3162(a)(1), (2) (requiring dismissal if no indictment or information is filed within the time limit under § 3161(h), or if the defendant is not brought to trial within the time limit under § 3161(c), and if certain factors warrant dismissal). Of note, this clock does not necessarily run continuously. Specified "periods of delay shall be excluded" from the pre- and post-indictment time limits. § 3161(h).

We discern no violations of the STA. There were no periods of time unaccounted for regarding the STA. Under § 3161(h)(6), a "reasonable period of delay" should be excluded "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." It follows that although A. Clarke was indicted in January 2013, A. Clarke's speedy trial clock did not start running until L. Clarke made his initial appearance in May 2013. *See* § 3161(h)(6) (excluding a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run"). Because A. Clarke never moved for severance prior to L. Clarke's appearance, the "reasonable period of delay" before May 2013 does not count towards the running of A. Clarke's speedy trial clock. *See United States v. Claxton*, 766 F.3d 280, 292 (3d Cir. 2014) (stating that "under [§ 3161(h)(6)], and until severance is granted, 'an exclusion applicable to one defendant applies to all codefendants'" (quoting *United States v. Novak*, 715 F.2d 810, 814 (3d Cir. 1983))).

In addition, under § 3161(h)(7)(A), "[a]ny period of delay" should be excluded if it "result[s] from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served . . . outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).

Here, A. Clarke consented to each of the continuance orders that he challenges and represented that they would "serve the ends of justice" under 18 U.S.C. § 3161(h)(7). We decline to dismiss his charges after the continuances he consented to were granted. *See United States v. Lattany*, 982 F.2d 866, 882-83 (3d Cir. 1992) ("Defendants cannot be wholly free to abuse the system by requesting [] continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted." (citing *United States v. Kucik*, 909 F.2d 206, 211 (7th Cir. 1990))).

Lastly, we reject A. Clarke's challenge to the retroactive nature of these continuances. Initially, only one of the challenged continuance orders was entered after A. Clarke's speedy clock had begun to run (i.e., once L. Clarke made his initial appearance). The fact that A. Clarke consented to that order and that it was entered before his speedy trial clock expired distinguishes it from the type of retroactive continuance orders we have rejected. *See, e.g.*, *United States v. Brooks*, 697 F.2d 517, 521-22 (3d Cir. 1982) (emphasis added) (observing that a court cannot grant retroactive continuances "providing after the fact justification for *unauthorized* delays" once the speedy trial clock has expired (citing *United States v. Carrasquillo*, 667 F.2d 382 (3d Cir. 1981)); *United States v. Brenna*, 878 F.2d 117, 121 (3d Cir. 1989) (declining to exclude

days where a "district judge did not order an ends of justice continuance before the seventy-day period expired").

### c. Sixth Amendment Speedy Trial Claims[5]

Appellants argue that the District Court erred by denying their requests to dismiss the charges based on violations of their Sixth Amendment right to a speedy trial. These claims fail, in large part because the delays are attributable to Appellants and their counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In evaluating whether this right has been violated, courts balance four factors: the "[l]ength of [the] delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the

---

[5]A. Clarke properly preserved his Sixth Amendment claims in the District Court. Accordingly, we "exercise *de novo* review over legal questions in a claim of Sixth Amendment error and review the underlying factual findings for clear error." *Claxton*, 766 F.3d at 293 (citing *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014)). By contrast, L. Clarke raised only Speedy Trial Act claims rather than Sixth Amendment claims before the District Court. His failure to raise Sixth Amendment claims before the District Court was likely inadvertent, as he raised them in his Opening Brief on appeal, and thus constitutes forfeiture. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993). Accordingly, we will review L. Clarke's claim for plain error. *Id.*

To satisfy the plain error standard, an Appellant has the burden of showing that "(1) the district court erred; (2) the error was clear or obvious; and (3) the 'error "affected the appellant's substantial rights,"'" which typically means that there is a reasonable probability that the error affected the outcome of the proceedings." *United States v. Foster*, 891 F.3d 93, 113 n.15 (3d Cir. 2018) (quoting *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013)). If those "conditions are met, we then have discretion to remedy the error," which we exercise "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Stinson*, 734 F.3d at 184).

defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.' . . . If a defendant's right to a speedy trial has been violated, the indictment must be dismissed." *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 522, 533).

First, we consider the length of delay, which is measured "from the date of arrest or indictment, whichever is earlier, until the start of trial." *Claxton*, 766 F.3d at 294 (quoting *Battis*, 589 F.3d at 678). This factor is the "triggering mechanism" to consider the remaining factors. *Barker*, 407 U.S. at 530. "If the delay is sufficiently long, courts assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay." *Battis*, 589 F.3d at 678 (citing *Doggett v. United States*, 505 U.S. 647, 652 (1992)). Given that we have deemed a 14-month delay to be sufficiently long to move onto the other *Barker* factors, *see Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993), A. Clarke's 36-month period between arrest and trial and L. Clarke's 29-month period between Indictment and trial satisfy this factor.

Second, we consider the reason for the delay—namely, which party caused it. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (stating that courts must ask "whether the government or the criminal defendant is more to blame for th[e] delay" (quoting *Doggett*, 505 U.S. at 651)). Here, the delay is largely attributable to Appellants.

Appellants filed numerous motions—many of them frivolous. At various points, A. Clarke and L. Clarke moved to proceed pro se**,** and indicated an intent to seek new counsel. A. Clarke sought to proceed with standby counsel and L. Clarke sought

9

replacement counsel. These motions prompted conferences and postponements to provide new counsel with time to prepare. On more than one occasion, the District Court postponed the trial due to the unavailability of Appellants' counsel, which is charged against Appellants. *See Brillon*, 556 U.S. at 90-91 ("[D]elay caused by the defendant's counsel"—whether "privately retained or publicly assigned"—is "charged against the defendant.").

And when the case finally proceeded to trial in June 2015, Appellants continued to cause disruptions and exhibit inappropriate behavior, even leading to A. Clarke's removal from the courtroom. This clearly cuts against finding a Sixth Amendment violation.

Third, we consider whether Appellants asserted their speedy trial rights. Although A. Clarke raised his Sixth Amendment rights before the District Court, his "other actions"—such as the filing of numerous frivolous motions—"indicate[d] that he [was] unwilling or unready to go to trial." *Hakeem*, 990 F.2d at 764 (citing *United States v. Loud Hawk*, 474 U.S. 302, 313-15 (1986)). L. Clarke, by contrast, never asserted his Sixth Amendment rights below. *See supra* n.5. This factor also cuts against finding a violation.

Fourth, we consider whether the delay prejudiced Appellants. It did not. We "assess[] [prejudice] in light of certain of the interests which the speedy trial right was designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *United States v. Shulick*, 18 F.4th 91, 102 (3d Cir. 2021) (quoting *Gov't of the V.I. v. Pemberton*, 813 F.2d 626, 629 (3d Cir. 1987)); *see also Claxton*, 766 F.3d at 296.

Here, Appellants assert that the death of a witness and the length of incarceration constitute prejudice. However, Appellants provided "no indication" as to what the witness "would have said" and made "no attempt . . . to preserve her testimony in [this] case." J.A.437–38. In addition, there is no evidence of "oppressive pretrial incarceration" or "incarcerat[ion] in substandard conditions compared to others," J.A. 436, especially because 11 months of A. Clarke's incarceration was based on a separate federal crime. Accordingly, we find no error in the District Court's denial of the motions for dismissal based on alleged Sixth Amendment violations.

### d. Alleged Multiplicity in the Superseding Indictment[6]

Appellants assert that their "convictions and sentences under Counts Two, Three, and Four for transporting stolen vehicles are multiplicitous and violate the Double Jeopardy Clause of the Fifth Amendment." L. Clarke's Br. 28; *see also* A. Clarke's Br. 3, n.2. Specifically, they argue that the three stolen cars charged in those counts were shipped abroad in one shipping container so "there can only be one conviction for transporting stolen vehicles under § 2312." L. Clarke's Br. 29. We reject this argument, as Appellants failed to raise it before the District Court and cannot satisfy plain error review.

"Multiplicity is the charging of a single offense in separate counts of an indictment," thereby potentially "subjecting a defendant to multiple sentences for the same offense." *United States v. Kennedy*, 682 F.3d 244, 254-55 (3d Cir. 2012). To

---

[6] Our review of double jeopardy and multiplicity rulings is plenary. *United States v. Hodge*, 870 F.3d 184, 194 (3d Cir. 2017).

11

determine if counts are multiplicitous, we must decide "whether the legislature intended to make separately punishable the different types of conduct referred to in the various counts." *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978). If the statute indicates a single "allowable unit of prosecution," then that means that Congress meant to criminalize each instance of the same conduct even if these instances are part of the same scheme. *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992).

We determine the "allowable unit of prosecution" by "first look[ing] to the language of th[e] statute." *Id*. Under § 2312, "[w]hoever transports in interstate or foreign commerce <u>a</u> motor vehicle, vessel, or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both." § 2312 (emphasis added).

The fact that Congress used a definite article—"a"—to describe the vehicles indicates an intent to impose separate punishments on the transportation of individual vehicles. *See United States v. Antrobus*, 191 F.2d 969, 972 (3d Cir. 1951) (declining to treat the separate transportation of three vehicles on the same day as one offense). Because Congress meant to criminalize each instance of transporting a stolen vehicle, the Superseding Indictment appropriately charges Appellants with three separate counts of transporting stolen vehicles.

### e. Amount of Loss[7]

Appellants argue that the District Court erred in its loss calculation by "includ[ing] speculative estimates for the value of 24 vehicles." L. Clarke's Br. 31; *see also* A. Clarke's Br. 3, n.2. Because Appellants objected to the loss calculation in the District Court on different grounds from those raised on appeal, plain error review applies. *See United States v. Dahl*, 833 F.3d 345, 349 (3d Cir. 2016) (conducting plain error review where a defendant objected to the application of the Sentencing Guidelines on new grounds on appeal). They have shown no error, much less a plain one.

Under U.S.S.G. § 2B1.1, the offense level is increased by the amount of loss. "Loss" means the "reasonably foreseeable pecuniary harm that resulted from the offense," or the "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i), (iv). "[O]nce the Government makes out a prima facie case of the loss amount, the burden of production shifts to the defendant to provide evidence that the Government's evidence is incomplete or inaccurate." *United States v. Jimenez*, 513 F.3d 62, 86 (3d Cir. 2008) (citing *United States v. Geevers*, 226 F.3d 186, 193 (3d Cir. 2000)). Then, the district court "make[s] a reasonable estimate of the loss . . . based on available information." U.S.S.G. § 2B1.1 cmt. n.3(C).

---

[7] We review the district court's finding as to the amount of loss under the Sentencing Guidelines for clear error. *United States v. Dullum*, 560 F.3d 133, 137 (3d Cir. 2009) (citing *United States v. Ali*, 508 F.3d 136, 143 (3d Cir. 2007)).

Here, the District Court made a reasonable loss estimate in light of expert testimony and testimony by an individual who personally retagged approximately 30 cars for Appellants. The calculation was based on the known value of six specific stolen vehicles and a value range for five stolen vehicles whose year, make, and model were known. For the remaining 19 vehicles with unknown values, the Probation Office first calculated the average value range of the 11 known vehicles. Then, it multiplied the low-end and high-end of the average value range by the number of unknown vehicles (i.e., 19). The result was between $1,919,376 and $2,122,443. This method for loss estimation—multiplying the number of victims by the average loss to each victim—is consistent with the Guidelines. *See* U.S.S.G. § 2B1.1 cmt. n.3(C)(iv). Accordingly, applying the 16-level Guidelines enhancement was appropriate. *See* U.S.S.G. § 2B1.1(b)(1)(I) (losses between $1.5 and $3.5 million qualify for a 16-level enhancement).

## III. Conclusion

For the foregoing reasons, we will affirm the judgments of conviction of the District Court.